Zachary E. Mushkatel (023377)
Jordan A. Brunner (035105)
**MUSHKATEL, GOBBATO & KILE, PLLC**
Attorneys At Law
15249 N 99th Avenue
Sun City, Arizona 85351
Telephone: (623) 889-0691
Facsimile: (623) 213-7282
firm@phoenixlawteam.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Gagne et al., | No. CV-24-01337-PHX-DJH |
| Plaintiffs, | |
| v. | **NOTICE OF FILING OF FIRST AMENDED COMPLAINT** |
| City of Mesa, et al. | |
| Defendants. | |

Plaintiffs, by and through undersigned counsel, and pursuant to Fed.R.Civ.P. 15(a)(1)(A) and LRCiv. 15(b), hereby notify the Court of their filing of the First Amended Complaint (the "FAC") as a matter of course. A copy of the FAC with strikethroughs (deletions) and underlined text (additions) as appropriate is attached hereto as **Exhibit A**. Represented defendants were presented with a copy of the FAC prior to this filing. Defendants lodged no objection to the filing of the FAC but waived no defenses to the FAC.

DATED this 23rd day of August, 2024.

**MUSHKATEL, GOBBATO & KILE, PLLC**

By: ***/s/ Jordan Brunner***
        Zachary E. Mushkatel
        Jordan A. Brunner
        *Attorneys for Plaintiffs*

1

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Kathleen L. Wieneke
Christina Retts
Garrett Griggs
WIENEKE LAW GROUP, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
*Attorneys for Defendants Rankin, McCormick,*
*Plott, Butler, Cutler, Haris, Navarro, Gonzalez*
*Stefick, Clover, Ibarra, Woodward, Gutierrez,*
*Carrasco, Cameron, Adair, Chuey, Goodrich,*
*Freeman, Freeman, Widmer, Nicholson,*
*Thomas, Hong, Kelly, Mask, George, Kurian,*
*Orr, Gangawere, Samons, and Lewinson*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

By:    */s/ Jordan Brunner*

Exhibit A

1  Zachary E. Mushkatel (023377)
2  Jordan A. Brunner (035105)
   **MUSHKATEL, GOBBATO & KILE, PLLC**
3  Attorneys At Law
   15249 N 99ᵗʰ Avenue
4  Sun City, Arizona 85351
   Telephone: (623) 889-0691
5  Facsimile: (623) 213-7282
   firm@phoenixlawteam.com

6  *Attorneys for Plaintiffs*

7

8                 **IN THE UNITED STATES DISTRICT COURT**

9                          **DISTRICT OF ARIZONA**

10

   **Christopher Gagne in his capacity as the**        No. CV-24-01337-PHX-DJH
11 **Personal Representative of the Estate of**
   **Shawn Taylor Gagne**; **Christopher and**
12 **Suzette Gagne**, husband and wife, as the
   surviving parents of decedent Shawn           **FIRST AMENDED COMPLAINT**
   Gagne,
13
14                                    Plaintiffs,

15 v.

16 **City of Mesa**, a political subdivision of the
   State of Arizona; **Kevin Cost**, Chief of
17 Mesa Police Department, individually and
   in his official capacity; ~~Lee Rankin,~~
18 ~~Assistant Chief, in his capacity as a police~~
   ~~officer;~~ ~~Dan Butler~~, ~~Assistant Chief, in his~~
19 ~~capacity as a police officer;~~ ~~Jeff Cutler~~,
   ~~Executive Commander, in his capacity as a~~
20 ~~police officer;~~ ~~James McCormick~~,
   ~~Commander of Special Operations~~
21 ~~Division, in his capacity as a police~~
   ~~officer;~~ ~~T. Intrieri~~, ~~District Commander,~~
22 ~~in his capacity as a police officer;~~
   **Matthew Harris**, in his individual
23 capacity and in his capacity as a police
   officer; **Kyle Thomas**, in his individual
24 capacity and in his capacity as a police
   officer; **Shawn Freeman**, in his individual
25 capacity and in his capacity as a police
   officer; **Matt Brown**, in his individual
26 capacity and in his capacity as a police
   officer; **Kyle Cameron**, in his individual
27 capacity and in his capacity as a police
   officer; **Matthew Chuey**, in his individual
28 capacity and in his capacity as a police

                                    1

officer; **Robert Goodrich**, in his individual capacity and in his capacity as a police officer; **Alejandro Navarro**, in his individual capacity and in his capacity as a police officer; ~~**Mark Mask**, in his individual capacity and in his capacity as a police officer; **A. Stefiek**, in his individual capacity and in his capacity as a police officer; **Andrew Gonzalez**, in his individual capacity and in his capacity as a police officer; **Bryant Clover**, in his individual capacity and in his capacity as a police officer; **Daryl Woodward**, in his individual capacity and in his capacity as a police officer; **Jess Nicholson**, in their individual capacity and in their capacity as a police officer; **J. George**, in his individual capacity and in his capacity as a police officer; **FNU Lewinson**, in his individual capacity and in his capacity as a police officer;~~ **Matthew Adair**, in his individual capacity and in his capacity as a police officer; ~~**Shawn Kurian**, in his individual capacity and in his capacity as a police officer; **Kade Carrasco**, in their individual capacity and in their capacity as a police officer; **Scott Freeman**, in his individual capacity and in his capacity as a police officer; **Nicholas Plott**, in his individual capacity and in his capacity as a police officer; ~~C.~~ **Christopher Orr**, in his individual capacity and in his capacity as a police officer; ~~**Casey Ibarra**, in their individual capacity and in their capacity as a police officer; **D. Samons**, in his individual capacity and in his capacity as a police officer; **J. Gutierrez**, in his individual capacity and in his capacity as a police officer; **Madison Kelly**, in their individual capacity and in their capacity as a police officer; **Treve Widmer**, in their individual capacity and in their capacity as a police officer; **Kayla Hong**, in her individual capacity and in his capacity as a police officer; **Marques Maldonado**, in his individual capacity and in his capacity as a police officer; **FNU Gangawere**, in his individual capacity and in his capacity as a police officer;~~ ABC Partnerships I-X; XYZ Corporations I-X; John Does I-X and Jane Does I-X,

                    Defendant.

Plaintiffs, by and through undersigned counsel, bring suit against Defendants and allege as follows:

## JURISDICTION & VENUE

1.     This Court has subject matter jurisdiction under 42 U.S.C. § 1331 because this action arises under 28 U.S.C. § 1983.

2.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to this action occurred in this district.

## PARTIES

3.     Plaintiff Christopher Gagne is a resident of Los Angeles County, California. He is the father of the decedent, Shawn Gagne. **Mr. Gagne is also the Personal Representative of the Estate of Shawn Tayor Gagne (the "Estate") and brings this action in that capacity under A.R.S. § 14-3110, 42 U.S.C. § 1983, and _Monell v. New York City Department of Social Services_, 436 U.S. 658 (1978).**

4.     Plaintiff Suzette Gagne is a resident of Los Angeles, California. She is the mother of the decedent, Shawn Gagne.

5.     Defendant City of Mesa is a political subdivision of the State of Arizona.

6.     Defendant Kevin Cost is the current chief of the City of Mesa Police Department ("MPD") and was the chief of the MPD at all relevant times.

7.     ~~Defendant Lee Rankin is the current Assistant Chief of the Investigations Bureau of MPD.~~

8.     ~~Defendant Dan Butler is the current Assistant Chief for Patrol Operations for MPD.~~

3

9.    Defendant Jeff Cutler is the current Executive Commander for Patrol Operations for MPD.

10.    Defendant James McCormick is the current Commander of the Special Operations Division of MPD.

11.    Defendant Chief T. Intrieri is a district commander with MPD. His badge number is 11225.

12.7.    Upon information and belief, Defendant Lieutenant Matthew Harris is a **Special Weapons and Tactics ("SWAT")** officer with MPD. His badge number is 16816. Defendant Harris oversaw the MPD SWAT officers who responded July 6, 2024 incident which gives rise to this Complaint (the "July 6th Incident"). **Upon information and belief**, he also fired **one of** the fatal shot**s** which killed Shawn.

13.8.    Upon information and belief, Defendant Sergeant Kyle Thomas is a SWAT officer with MPD. His badge number is P17067. **Defendant Thomas fired lethal munitions at Shawn**.

14.    Upon information and belief, Defendant Sergeant Jess Nicholson is a patrol officer with MPD. Their badge number is 19465. Defendant Nicholson ordered MPD SWAT to replace MPD patrol officers on the southern perimeter around Shawn's unit (#2164).

15.    Upon information and belief, Defendant Sergeant J. George is a patrol officer with MPD. His badge number is 17283.

16.    Upon information and belief, Defendant Sergeant FNU Lewinson is a patrol officer with MPD. His badge number is 20138.

17.9.    Upon information and belief, Defendant Shawn Freeman is a SWAT officer

with MPD. His badge number is 20207. Defendant Freeman ~~shot~~ **fired lethal munitions** at Shawn twice during the July 6th Incident, hitting Shawn with **at least** one of his shots. **Defendant Freeman had and continues to have a demonstrated history of engaging in domestic violence and other criminal activity which was known to the MPD at the time of the July 6th Incident.**

~~18.~~10. Upon information and belief, Defendant Matt Brown is a SWAT officer with MPD. His badge number is P21421. **Defendant Brown fired lethal munitions at Shawn**.

~~19.~~11. Upon information and belief, Defendant Kyle Cameron is a SWAT officer with MPD. His badge number is P20495. **Defendant Cameron fired lethal munitions at Shawn**.

~~20.~~12. Upon information and belief, Defendant Matthew Chuey is a SWAT officer with MPD. His badge number is 21315. **Defendant Chuey fired lethal munitions at Shawn**.

~~21.~~13. Upon information and belief, Defendant Robert Goodrich is a SWAT officer with MPD. His badge number is P20130. **Defendant Goodrich fired lethal munitions at Shawn**.

~~22.~~14. Upon information and belief, Defendant Alejandro Navarro is a SWAT officer with MPD. His badge number is P19827. **Defendant Navarro fired lethal munitions at Shawn**.

~~23.    Upon information and belief, Defendant Mark Mask is a SWAT officer with MPD. His badge number is 15668.~~

~~24.    Upon information and belief, Defendant A. Stefick is a SWAT officer with~~

~~MPD. His badge number is 23461. Defendant Stefick fired ferret gas munitions into Shawn's apartment, tased Shawn, and handcuffed him – all after Shawn was already dead.~~

~~25.    Upon information and belief, Defendant Andrew Gonzalez is a SWAT officer with MPD. His badge number is 19451.~~

~~26.    Upon information and belief, Defendant Bryant Clover is a SWAT officer with MPD. His badge number is 20541.~~

~~27.    Upon information and belief, Defendant Daryl Woodward is a SWAT officer with MPD. His badge number is 15726.~~

~~28.~~15. Upon information and belief, Defendant Matthew Adair is a patrol officer with MPD. His badge number is 18901. Defendant Adair was the Primary Negotiator on scene during the July 6th Incident.

~~29.    Upon information and belief, Defendant Shawn Kurian is a patrol officer with MPD. His badge number is 21070. Defendant Kurian gave orders to shoot bean bag rounds at and into Shawn's apartment during the July 6th Incident. He also recorded Shawn's time of death.~~

~~30.    Upon information and belief, Defendant Kade Carrasco is a patrol officer with MPD. Their badge number is 22609.~~

~~31.    Upon information and belief, Defendant Scott Freeman is a patrol officer with MPD. His badge number is 23084. Defendant Freeman shot bean bag rounds at and into Shawn's apartment unit.~~

~~32.    Upon information and belief, Defendant Nicholas Plott is a patrol officer with MPD. His badge number is 321641.~~

33.16. Upon information and belief, Defendant C. **Christopher** Orr is a patrol officer with MPD. His badge number is 19441. Defendant Orr was a Secondary Negotiator on scene during the July 6th Incident. **Upon information and belief, Defendant Orr played an active role in the July 6th Incident, including by assisting Defendant Adair in negotiating with Shawn**.

34.    Upon information and belief, Defendant Casey Ibarra is a patrol officer with MPD. Their badge number is 22438.

35.    Upon information and belief, Defendant D. Samons is a patrol officer with MPD. His badge number is 19185. Defendant Samons was the Primary Scene Supervisor during the July 6th Incident.

36.    Upon information and belief, Defendant J. Gutierrez is a patrol officer with MPD. His badge number is 21423. Defendant Gutierrez spoke with Shawn's live-in fiancée, Jordan Wirtjes, about Shawn's mental state and intoxication after MPD arrived on scene.

37.    Upon information and belief, Defendant Madison Kelly is a patrol officer with MPD. Their badge number is 23422.

38.    Upon information and belief, Defendant Treve Widmer is a patrol officer with MPD. Their badge number is 19506.

39.    Upon information and belief, Defendant Kayla Hong is a patrol officer with MPD. Her badge number is 24475.

40.    Upon information and belief, Defendant Marques Maldonado is a patrol officer with MPD. His badge number is 21682. Defendant Maldonado attempted to communicate with Shawn via intercom and through Jordan Wirtjes' cell phone during the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

~~July 6th Incident.~~

~~41.    Upon information and belief, Defendant FNU Gangawere is a patrol officer~~
~~with MPD. His badge number is 20437.~~

42. 17. Defendants ABC Partnerships I-X, XYZ Corporations, John Does I-X, and Jane Does I-X (collectively the "Doe Defendants") are public entities, corporations, limited liability companies, limited partnerships, joint ventures, business entities—incorporated or doing business in Arizona—or legal or natural persons with liability for the actions or omissions giving rise to the cause of action described below. The names of these Doe Defendants are presently unknown to Plaintiffs, and they are therefore sued under an alias. The true names of such Doe Defendants will be submitted when they become known. Additionally, any non-party designated by a Defendant is to be deemed as one of these fictitiously named Doe Defendants.

43. 18. Defendant City of Mesa engaged in what appeared to be delay tactics in this case to deliberately stall the disclosure of information pertinent to the preparation of Plaintiffs' Notice of Claim under A.R.S. § 12-821.01 and this Complaint. Indeed, Plaintiffs were forced to file a Complaint for Special Action with the Maricopa County Superior Court to compel the disclosure of critical body camera footage from the July 6th Incident. Due to Defendant City of Mesa's practice of delaying the release of information in this case, Plaintiffs reserve the right to amend this Complaint to include additional information and identify additional defendants associated with the July 6th Incident as discovered.

**FACTUAL ALLEGATIONS**

44. 19. Shawn Gagne died as a result of MPD officers **and SWAT** using unreasonable

8

and excessive force when they shot the unarmed, wounded, and extremely intoxicated Shawn Gagne in his home as he attempted to surrender to law enforcement.

45.20. Shawn was twenty-eight (28) years old when he was killed by MPD officers.

46.21. At all relevant times herein, Shawn was living at Glen at Mesa Apartment Complex located at 1233 N. Mesa Dr., Mesa, AZ 85201. Shawn resided in Unit #2164.

47.22. Defendant City of Mesa engaged in what appeared to be delay tactics in this case to deliberately stall the disclosure of information pertinent to the preparation of Plaintiffs' Notice of Claim under A.R.S. § 12-821.01 and this Complaint. Indeed, Plaintiffs were forced to file a Complaint for Special Action with the Maricopa County Superior Court to compel the disclosure of critical body camera footage from the July 6th Incident. Due to Defendant City of Mesa's practice of delaying the release of information in this case, Plaintiffs are unaware at this time of how many MPD officers fired shots at Shawn Gagne and reserve the right to amend this Complaint as more information becomes available.

### Shawn's Neighbor Provokes MPD Response

48.23. On July 6, 2023, at approximately 8:35 p.m., Shawn engaged in a verbal confrontation with a neighbor who had knocked on his door, presumably to visit Shawn's live-in fiancée, Jordan Wirtjes.

49.24. Shawn answered the door and refused to allow the neighbor entry to the home.

50.25. Jordan stepped outside and informed the neighbor that Shawn was extremely intoxicated.

51.26. Shawn was scheduled to enter an alcohol treatment facility the next day.

52.27. While the two (2) women were talking outside the apartment, Shawn

1
2

overheard their conversation and demanded the women stop talking about him and insisted

they leave the area.

3
4
5
6

53.28. The neighbor retreated to her home to call 911 alleging Shawn fired a weapon

into the air from his patio while Jordan walked to the grocery store across from the apartment

complex.

7

**MPD Responds**

8

54.29. At approximately 9:33 p.m., MPD surrounded Shawn's apartment unit.

9
10
11
12

55.30. At or around the same time, Defendant Marques Maldonado (#21682)

attempted to communicate with Shawn via intercom announcements, squad car sirens and

lights for fifteen (15) minutes without response.

13
14
15
16
17

56.31. Defendant Shawn Kurian (#21070) then instructed Defendant S. Freeman

(#23084) to deploy projectile bean bag rounds at the front door to get Shawn's attention.

Shawn did not respond after several minutes. Defendant Kurian then instructed Defendant

Freeman to deploy bean bag rounds through the westside upper windows of Shawn's unit.

18
19
20

57.32. Cox internal surveillance video confirms Shawn was asleep on the sofa during

these initial efforts to communicate.

21

**Shawn's Cognitive Impairment Made Known to MPD**

22
23
24
25
26

58.33. When Jordan returned from the grocery store, she was met by MPD. She

informed Defendant J. Gutierrez (#21423), a Secondary Negotiator on scene, that Shawn

was alone in the unit and was heavily intoxicated after drinking a half gallon of vodka off

and on throughout the day.

27
28

59.34. Jordan also informed Defendant J. Gutierrez that Shawn routinely drank and

became depressed and assured Defendant J. Gutierrez that Shawn would come to his senses once sober. She also encouraged officers to permit Shawn adequate time for the intoxication to subside.

60.35. Jordan also conveyed that Shawn made statements during the day about "not wanting to be here anymore" ad that "he could not do it anymore" while heavily intoxicated.

61.36. Eventually, Shawn awoke from sleep startled and confused, stepped onto his patio to identify the source of the noise outside his unit, then went down a short flight of stairs to the front door. As he opened the door, Shawn saw officers and shouted "what?!?," "get out!" and shut the door.

62.37. Within minutes, Shawn returned to his front door with a rifle pointed down at his side. Shawn did not raise the rifle. No further announcements were made once Shawn was observed at the door.

**MPD Escalates Confrontation**

63.38. Approximately twenty-seven (27) minutes later, at around 10:00 p.m., MPD SWAT officers responded to the scene as radio traffic escalated.

64.39. Upon arriving at the scene, Defendant Sergeant Jess Nicholson (#19465) instructed SWAT officers to replace MPD patrol officers on the southern perimeter of Shawn's apartment.

65.40. MPD SWAT assembled sniper perches in other apartment units with direct lines of sight to Shawn's unit windows and glass patio doors. Defendant Shawn Freeman (#20207), a SWAT sniper, positioned himself in unit #2165 in a hidden perch. From this position, Defendant Freeman scouted the second story balcony of Shawn's unit.

11

66.41. At approximately 10:19 p.m., Defendant D. Samons (#19185), the Primary Scene Supervisor, instructed Shawn via a vehicle PA system to exit his apartment without anything in his hands. Shawn responded by ranting with irrational statements, some inviting violence and others demonstrative of his altered mental state.

67.42. At approximately 10:25 p.m., MPD instructed Jordan to call Shawn's cell phone. Upon answering, Shawn asked Jordan why law enforcement was present and demanded that the officers leave him alone. Defendant Marques Maldonado (#21682), who had attempted to communicate with Shawn when MPD first arrived, took the phone from Jordan to explain why MPD was present and instructed Shawn to come out. The call was terminated.

68.43. At 10:31 p.m., Shawn called Jordan, who handed the phone to Defendant Matthew Adair (#18901), the Primary Negotiator on scene. Defendant Adair, after telling Shawn he would relay his request for the police to relocate to his MPD supervisors, encouraged Shawn to walk out the front door. Shawn refused.

69.44. The conversation was broadcast over MPD radio while officers monitored Shawn's movements through the windows and glass patio doors on either side of the upstairs room. Shawn could be seen pacing in his apartment as he spoke with Defendant Adair.

70.45. At approximately 10:41 p.m., SWAT officers began aiming rifle lasers through the windows into the apartment while Shawn still on the phone with Defendant Adair. Shawn demanded the officers turn off their sirens, put down their lasers, back away from the apartment and leave. Defendant Adair then informed Shawn they were there because of the "incident." Shawn responded, "what incident?"

1

**MPD SWAT Opens Fire on Shawn**

2

3

4

5

71.46. At approximately 10:44 p.m., while Shawn was speaking with Defendant Adair, Defendant Shawn Freeman (#20207) ignored the status of the negotiations and Shawn's mental status by opening fire, hitting Shawn.

6

7

72.47. After Defendant Adair confirmed Shawn was hit, he heard a second shot by Defendant Freeman.

8

9

10

11

73.48. Defendant C. Orr (#19441), a Secondary Negotiator, advised Defendant Adair of an officer-involved shooting. Defendant Adair then instructed Shawn to walk out the front door with his hands up.

12

13

14

15

16

74.49. Surveillance video shows Shawn placed his weapon on the kitchen counter, raised both of his empty hands in the air, and began slowly walking towards the landing leading down to his front door. Prior to any gunfire, Jordan advised officers that Shawn's vest was designed to hold armor but did not have any ballistic plates inserted.

17

18

19

20

21

22

23

75.50. As Shawn walked out of the kitchen towards the front door, Defendant Adair asked Shawn if he was hurt and where he had been hit. Shawn relayed that he was struck in the face. Defendant Adair informed Shawn that emergency medical personnel were on scene to render him aid once he exited his apartment. Defendant Adair again requested Shawn make his way towards the front door exit with his empty hands raised. Shawn attempted to comply.

24

25

26

27

28

76.51. Shawn was visible from the landing windows and glass patio doors on either side of the apartment as he slowly walked towards the stairway landing with his empty hands in the air. Camera footage verifies Shawn followed commands, leaving a trail of blood from

13

the kitchen as he walked.

77.52. As Shawn neared the stairway landing, MPD officers, including SWAT officers, opened fire *en masse* from both sides of the apartment unit.

78.53. Shawn tumbled down the stairs, severely wounded. His breathing was labored. When the shooting stopped temporarily, Shawn shouted, "I'm down!" "I'm down!" "I'm down!" The front door was open when Shawn was again fired upon by Defendant Sergeant Matthew Harris (#16816) and possibly other officers. Defendant Adair then shouted "weapons down!"

**MPD Conduct After Excessive Force and Killing of Shawn**

79.54. At approximately 11:02 p.m., MPD entered the apartment by having Defendant Woodward (#15726) fly a drone through the open front door. Shawn's leg could be seen through the open front door as he lay underneath an unhinged door in front of the entry of the apartment. Defendant A. Stefick (#23461) then delivered four (4) rounds of ferret gas munitions into Shawn's apartment through the eastside patio. Defendant Lieutenant Matthew Harris (#16816) (then a SWAT sergeant) requested more officers to the north side of the building to assist with entry into Shawn's apartment.

80.55. At approximately 11:15 a.m., Defendant M. Mask (#15668) deployed K9 Rico to assess Shawn. MPD SWAT officers entered Shawn's apartment through the front door. Defendant A. Stefick (#23461) deployed a taser into Shawn's neck and right calf before handcuffing him behind his back. MPD SWAT officers then dragged Shawn's lifeless body down the front steps.

81.56.  At 11:41 p.m., a Mesa Fire Department leader advised that a Banner Desert

14

Medical Center doctor who was monitoring their equipment pronounced Shawn deceased at the scene. Shawn was left at the bottom of the stairs as Defendant Shawn Kurian (#21070) informed scene supervisors of Shawn's time of death.

### Count One (§ 1983)

(All Named Defendants Violated Shawn's Civil Rights Under 42 U.S.C. § 1983)

~~82.~~57. Plaintiffs reallege and incorporate by reference all preceding allegations.

~~83.~~58. All named and Doe Defendants acted under the color of state law to deprive Plaintiffs and Shawn of their rights, privileges, or immunities secured by the laws of the United States.

~~84.~~59. Shawn had the greatest possible interest in and right to his life.

~~85.~~60. Shawn was intoxicated when he was shot by MPD officers, including Defendants Freeman (#20207) and Harris (#16816).

~~86.~~61. Shawn was severely outnumbered and outgunned when he was shot by MPD officers, including Defendants Freeman (#20207) and Harris (#16816).

~~87.~~62. Shawn complied with MPD commands to drop his weapon before he was shot by MPD officers, including Defendant Harris (#16816).

~~88.~~63. Shawn was unarmed when he was shot by MPD officers, including Defendant Harris (#16816).

~~89.~~64. Shawn was not within close proximity to police or the public when he was shot by MPD officers, including Defendants Freeman (#20207) and Harris (#16816).

~~90.~~65. Shawn was not attempting to escape nor was he advancing towards police or the public when he was shot by MPD officers, including Defendants Freeman (#20207) and Harris (#16816).

91.66. Shawn posed no immediate threat to police or the public when he was shot by MPD officers, including Defendants Freeman (#20207) and Harris (#16816).

92.67. Apprehension by use of excessive and/or deadly force is recognized as a seizure subject to the reasonableness requirement of the Fourth and Fourteenth Amendments.

93.68. MPD's use of force against Shawn constituted an unreasonable seizure of his person and was willful, malicious, intentional, reckless, and with deliberate indifference to Shawn's constitutional rights.

94.69. MPD's use of force against Shawn directly and proximately caused his death.

95.70. As a result of MPD's use of force against Shawn, **Shawn was** ~~Plaintiffs have been~~ deprived of ~~their~~ his relationship with his parents ~~their son, Shawn. Since Shawn's death, Plaintiffs have experienced grief, loss, and emotional distress.~~

96.71. **The Estate brings this claim requesting** ~~Plaintiffs are entitled to~~ full and fair compensation for ~~their~~ damages stemming from MPD's use of force against Shawn, including for ~~their~~ loss of love, affection, companionship, care, protection, and guidance, and the pain, grief, sorrow, anguish, stress, shock, and mental suffering from the loss.

### Count Two (*Monell*)
(Defendant**s** City of Mesa **and Cost Were** ~~Was~~ Deliberately Indifferent to Shawn's Rights under *Monell*)

72.    Plaintiffs reallege and incorporate by reference all preceding allegations.

73.    **Defendant City of Mesa is responsible for training and supervising MPD officers regarding the exercise of restraint in using of force against residents of Mesa, Arizona.**

16

74.    **Defendant City of Mesa is responsible for training and supervising MPD officers regarding methods and techniques to de-escalate and stabilize chaotic and potentially violent scenes.**

75.    **Defendant City of Mesa is responsible for training and supervising MPD officers regarding adequate communication and coordination between on-scene negotiators and SWAT officers to ensure unnecessary force is not used in response to behavior exhibited by suspects, victims, or the broader public.**

76.    **Upon information and belief, Defendant Cost possesses final policy-making authority to approve and ratify all MPD policies and training materials.**

~~97.~~77.    **Upon information and belief, Defendant Cost possesses final decision-making authority regarding the assignment and retention of all SWAT officers.**

78.    Defendant City of Mesa is responsible for training and supervising MPD officers regarding interactions with mentally ill, intoxicated and/or emotionally disturbed citizens.

79.    **Defendant City of Mesa failed to properly train and supervise MPD officers to ensure they exercise necessary restraint when using lethal force against residents of Mesa, Arizona.**

80.    **Defendant City of Mesa failed to properly train and supervise MPD officers to ensure they employ de-escalation methods and techniques to de-escalate and stabilize chaotic and potentially violent situations.**

81.    **Upon information and belief, Defendant City of Mesa has promulgated or adopted policies and training materials which permit and/or encourage MPD officers,**

17

**including MPD SWAT, to prioritize their own safety rather than the safety of residents of Mesa, Arizona in employing lethal force.**

98.82.  **Upon information and belief, Defendant City of Mesa has promulgated or adopted policies and training materials which encourage MPD officers, including MPD SWAT, to use force before taking adequate measures to de-escalating chaotic and potentially violent situations.**

~~99.    Defendant City of Mesa failed to properly train and supervise MPD officers regarding interaction with the mentally ill, intoxicated and/or emotionally disturbed citizens.~~

100.83.    Defendant City of Mesa has created a culture of impunity permitting officers to use excessive and unnecessary force without fear of discipline or oversight.

101.84.    Defendant City of Mesa created this culture of impunity by:

a.  Failing to track officer uses of force to identify officers who use force more than other officers and failing to initiate an early warning system regarding such officers;

b.  Adopting a policy, custom, or practice of delaying the release of information relating to incidents involving officer uses of force to prevent the public and the victims of police violence from learning about the real facts involved in police uses of force;

c.  Adopting a policy, custom, or practice of "purging" Officer discipline records so that officers who are the subject of repeated complaints and investigations cannot be identified, and the victims of police violence will have difficulty demonstrating the City of Mesa's custom, pattern, and practice of using excessive force;

d.  Adopting a policy, custom and practice of failing to fully investigate incidents involving officer uses of force deaths; and

e.  Adopting a policy, custom and practice of failing to discipline, terminate, and/or retrain officers who use excessive force.

85.    **Defendant City of Mesa failed to properly train and supervise MPD**

18

**officers to ensure adequate communication and coordination exist between negotiators and SWAT.**

**86.    Upon information and belief, Defendant City of Mesa has promulgated or adopted policies and training materials which encourage SWAT officers to ignore or overlook the recommendations or directives of on-scene negotiators in favor of employing force against suspects.**

**87.    Upon information and belief, Defendant Cost exercised his final policy-making authority to approve MPD policies and training materials which permit and/or encourage MPD officers, including MPD SWAT, to prioritize their own safety rather than the safety of residents of Mesa, Arizona in employing lethal force.**

**88.    Upon information and belief, Defendant Cost exercised his final policy-making authority to approve MPD policies and training materials which permit and/or encourage MPD officers, including MPD SWAT, to use force before taking adequate measures to de-escalating chaotic and potentially violent situations.**

**89.    Upon information and belief, Defendant Cost exercised his final policy-making authority to approve MPD policies and training materials which permit and/or encourage SWAT officers to ignore or overlook the recommendations or directives of on-scene negotiators in favor of employing force against suspects.**

**90.    Upon information and belief, Defendant Cost exercised his final decision-making authority to approve the selection and retention of Defendant Freeman (#20207) onto MPD SWAT.**

**91.    Upon information and belief, Defendant Freeman (#20207) had a history**

of violence and inappropriate behavior prior to his selection by MPD employees for MPD SWAT.

92.    Upon information and belief, Defendant Freeman (#20207)'s prior violence and inappropriate behavior was or should have been known to MPD officers, including Defendant Cost.

93.    Upon information and belief, Defendant Freeman (#20207)'s prior violence and inappropriate behavior did or should have placed Defendant City of Mesa on notice such that he should not have been selected to serve on MPD SWAT.

94.    Defendant Freeman (#20207)'s criminal activity has direct relation to his decision to use unnecessary force against Shawn, without justification, and thus to violate his clearly established constitutional rights.

95.    Defendant Freeman (#20207)'s conduct during the July 6th Incident set events in motion which directly led to Shawn's death and the deprivation of his clearly established constitutional rights.

96.    Defendant Cost made a conscious, affirmative choice to approve the selection and retention of Defendant Freeman by his subordinates.

97.    Defendant Cost's decision is not required to govern future selection of SWAT officers to constitute ratification of the excessive use of force employed by MPD in this matter.

98.    Defendant City of Mesa failed to properly train and supervise MPD officers regarding interaction with the mentally ill, intoxicated and/or emotionally disturbed citizens.

102.99.    By their policies and practices, Defendant City of Mesa subjected Shawn to a substantial risk of serious harm and injury. These policies and practices were implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of the deprivation of Shawn's right secured by the United States Constitution.

103.100.    Defendant City of Mesa directed subordinates and/or set in motion a series of acts by subordinates and/or knew or reasonably should have known of all of the deprivation complained of herein and have condoned or been deliberately indifferent to such conduct consistent with the standard outlined in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), resulting in injury and death.

104.101.    These acts, omissions, and the deliberate indifference to Shawn's rights directly and proximately caused pain, suffering, and death to Shawn, and directly and proximately caused Plaintiffs' injuries and damages.

105.102.    ~~Plaintiffs~~ **The Estate** seek**s** punitive damages as Defendants wrongful actions and omissions were compelled by evil motive and/or were intentional and/or malicious and involved reckless and callous indifference to Shawn's federally protected rights.

**Count Three (Assault/Aggravated Assault/Wrongful Death~~Gross Negligence~~)**
(~~All Named~~ **Defendants Brown, Cameron, Chuey, Freeman, Goodrich, Harris, Navarro, and Thomas Committed Assault and Battery Leading to Shawn's Death**~~Were Grossly Negligent~~)

106.103.    Plaintiffs reallege and incorporate by reference all preceding allegations.

107.104.    A surviving parent of a child who dies through the tortious or criminal

actions of another may bring a claim in wrongful death for the death of the child pursuant to Arizona's Wrongful Death Act, A.R.S. § 12-611, 612, and *Reed v. Frey*, 458 P.2d 386 (1969).

108. ~~Defendants had a duty of care to serve and protect the public, including Shawn and Plaintiffs.~~

109. ~~Defendants had a duty of care to act with reasonable care in deploying force against real or perceived threats to the public welfare.~~

110. ~~Defendants had a duty of care to act with reasonable care in effecting searches and seizures.~~

111. ~~Defendants breached their duties of care by employing unreasonable and unnecessary force in their interactions with Shawn, directly and proximately causing his death and proximately causing Plaintiffs' injuries and damages.~~

112. ~~Defendants' breaches of their duties of care, directly and proximately causing the death of Shawn, shock the conscience of ordinary citizens, and constitutes gross negligence.~~

**105.   A person commits the crime of assault when they "[i]ntentionally, knowingly or recklessly causing any physical injury to another person." A.R.S. § 13-1203(A)(1).**

**106.   A person commits the crime of aggravated assault when they commit the crime of assault under A.R.S. § 13-1203(A) using "a deadly weapon or dangerous instrument." A.R.S. § 13-1204(A)(2).**

**107.   Defendants Brown, Cameron, Chuey, Freeman, Goodrich, Harris,**

22

**Navarro, and Thomas committed assault and aggravated assault.**

**108.    Defendants Brown, Cameron, Chuey, Freeman, Goodrich, Harris, Navarro, and Thomas, in firing lethal munitions at Shawn using a deadly weapon, intentionally, knowingly, or recklessly caused physical injury to Shawn.**

**109.    The physical injury caused by Defendants Brown, Cameron, Chuey, Freeman, Goodrich, Harris, Navarro, and Thomas was the proximate cause of Shawn's wrongful and unnecessary death.**

~~113.~~110.    As a direct and proximate result of Defendants' **intentional, knowing, or reckless behavior** ~~negligence~~, Plaintiffs **Chris and Suzette Gagne** have suffered and will continue to suffer immeasurable mental and physical pain and suffering.

~~114.~~111.    As a direct and proximate cause of Defendants' **intentional, knowing, or reckless behavior** ~~negligence~~, Plaintiffs **Chris and Suzette Gagne** have been deprived of the care, support, companionship, and love of decedent.

~~115.~~112.    As a direct and proximate cause of Defendants' **intentional, knowing, or reckless behavior** ~~negligence~~, Plaintiffs **Chris and Suzette Gagne** have suffered and will continue to suffer financial and economic damages in an amount to be proven at trial.

**Count Four (Negligent Hiring, Training, and Supervision)**
(Defendant City of Mesa Was Negligent in Hiring, Training, and Supervising Officers)

113.    Plaintiffs reallege and incorporate by reference all preceding allegations**, specifically the allegations set forth in Paragraphs 72-102 of this First Amended Complaint.**

114.    **Defendant Cost's conduct and/or ratification of conduct by others is imputable to Defendant City of Mesa.**

23

115.    Upon information and belief, Defendant Cost exercised his final decision-making authority to approve the selection and retention of Defendant Freeman (#20207) onto MPD SWAT.

116.    Upon information and belief, Defendant Freeman (#20207) had a history of violence and inappropriate behavior prior to his selection by MPD employees for MPD SWAT.

117.    Upon information and belief, Defendant Freeman (#20207)'s prior violence and inappropriate behavior was or should have been known to MPD officers, including Defendant Cost.

118.    Upon information and belief, Defendants City of Mesa and Cost knew or should have known of Defendant Freeman (#20207)'s propensity to commit violent acts against others, including Shawn.

119.    Upon information and belief, Defendant Freeman (#20207)'s prior violence and inappropriate behavior did or should have placed Defendant City of Mesa on notice such that he should not have been selected to serve on MPD SWAT.

120.    Defendant Freeman (#20207)'s criminal activity has direct relation to his decision to use unnecessary force against Shawn, without justification, and thus to violate his clearly established constitutional rights.

121.    Defendant Freeman (#20207)'s conduct during the July 6th Incident set events in motion which directly led to Shawn's death and the deprivation of his clearly established constitutional rights.

116.122.    Defendant Cost made a conscious, affirmative choice to approve

24

**the selection and retention of Defendant Freeman by his subordinates.**

~~117.~~123.        Defendant City of Mesa failed to exercise adequate hiring, training and supervision of MPD officers and are liable to Plaintiffs for their deliberate indifference with the lack of adequate hiring, training, and supervision.

~~118.~~124.        Defendant City of Mesa knew or should have known that the lack of training and supervision was likely to result in a constitutional violation and a deprivation of rights.

~~119.~~125.        These acts and omissions directly and proximately caused pain, suffering, and death to Shawn, and directly and proximately caused Plaintiffs' injuries and damages.

### Count Five (Loss of Consortium)
(All Named Defendants Caused Plaintiffs' Loss of Consortium)

126.    Plaintiffs reallege and incorporate by reference all preceding allegations.

**127.    A loss of consortium claim is a separate claim which is derivative of an underlying claim for tortious conduct. *Martin v. Staheli*, 248 Ariz. 87, 93-94 (App. 2019).**

~~120.~~**128.        Shawn did not immediately die after suffering multiple potentially fatal wounds from lethal munitions fired by Defendants Brown, Cameron, Chuey, Freeman, Goodrich, Harris, Navarro, and Thomas. Upon information and belief, MPD officers, including Defendant Orr, described Shawn as "moving around" and his breathing as "heavy" just after he was shot. Only after being tased, stepped over, and handcuffed did Shawn expire.**

~~121.~~129.        As a result of the **negligent and intentional acts** and omissions of all

25

named and Doe Defendants, Plaintiffs **<u>Chris and Suzette Gagne</u>** have been permanently deprived of the society and companionship of their son, Shawn, and have been permanently deprived of his contribution to their household.

~~122.~~130.    As a result of the **<u>negligent and intentional</u>** acts and omissions of all named and Doe Defendants, Plaintiffs **<u>Chris and Suzette Gagne</u>** have been deprived of the support they would have expected from their son in their elder years.

**WHEREFORE**, Plaintiffs respectfully request judgment against named and Doe Defendants as follows:

A.    For Plaintiffs' general damages in an amount to be proven at trial;

B.    For Plaintiffs' special damages, ~~including special damages incurred in Shawn's last hospitalization~~;

C.    For Plaintiffs' economic and financial damages in an amount to be proven at trial;

D.    For punitive damages in an amount sufficient to punish Defendants for their conduct, and deter others from the same;

E.    For pre-judgment and post-judgment interest at the statutory rate;

F.    For Plaintiffs' attorneys' fees and taxable costs; and

G.    For such other relief and further relief as the Court deems just and proper under the circumstances.

DATED this 23rd day of August, 2024.

**MUSHKATEL, GOBBATO & KILE, PLLC**

By: **_/s/  Zachary Muskhatel_**
Zachary E. Mushkatel
Jordan A. Brunner
*Attorneys for Plaintiffs*