Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
Garrett Griggs, Bar #030525
WIENEKE LAW GROUP, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com
Email: ggriggs@wienekelawgroup.com

*Attorneys for Defendants City of Mesa,
Harris, Navarro, Cameron, Adair, Chuey,
Goodrich, Freeman, Thomas, Orr, Brown,
and Cost*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Gagne in his capacity as the Personal Representative of the Estate of Shawn Taylor Gagne; Christopher and Suzette Gagne, husband and wife, as the surviving parents of decedent Shawn Gagne,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Mesa, a political subdivision of the State of Arizona; Kevin Cost, Chief of Mesa Police Department, individually and in his official capacity; Matthew Harris, in his individual capacity and in his capacity as a police officer; Kyle Thomas, in his individual capacity and in his capacity as a police officer; Shawn Freeman, in his individual capacity and in his capacity as a police officer; Matt Brown, in his individual capacity and in his capacity as a police officer; Kyle Cameron, in his individual capacity and in his capacity as a police officer; Matthew Chuey, in his individual capacity and in his capacity as a police officer; Robert Goodrich, in his individual capacity and in his capacity as a police officer; Alejandro Navarro, in his individual capacity and in his capacity as a police officer; Matthew Adair, in his individual capacity and in his capacity as a police | NO. 2:24-cv-01337-DJH<br><br>**DEFENDANTS' PARTIAL ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT[1]** |

---

[1] Defendants Adair, Orr and Cost have filed a Motion to Dismiss all claims against them. Defendant City of Mesa has filed a Motion to Dismiss the Monell claim. The remaining Defendants have filed a Motion to Dismiss Count 5.

officer; Christopher Orr, in his individual
capacity and in his capacity as a police
officer; ABC Partnerships I-X; XYZ
Corporations I-X; John Does I-X and Jane
Does I-X,
                        Defendants.

Defendants City of Mesa, Harris, Navarro, Cameron, Adair, Chuey, Goodrich, Freeman, Thomas, and Brown ("Defendants"), for their Partial Answer to Plaintiffs' First Amended Complaint, deny each allegation contained in Plaintiffs' First Amended Complaint and each claim for relief which is not expressly admitted or otherwise pled to.

Defendants demand a jury trial on all triable issues.

## JURISDICTION & VENUE

1.    In answering Paragraph 1 of Plaintiffs' Complaint, the allegations do not call for a response from these Answering Defendants. Defendants do not dispute subject matter jurisdiction under 42 U.S.C. § 1983 (original jurisdiction for constitutional claims and supplemental jurisdiction for the state law claims).

2.    In answering Paragraph 2 of Plaintiffs' Complaint, the allegations do not call for a response from these Answering Defendants.  Defendants do not dispute that venue is proper because the events at issue in this litigation occurred in Mesa, Arizona, within this district.

## PARTIES

3.    In answering Paragraph 3 of Plaintiffs' Complaint, Defendants lack sufficient information to form a belief as to the truth of the allegations and therefore deny the same. Defendants deny that there exists a right to file any survival actions pursuant to A.R.S. § 14-3110. Defendants affirmatively allege that due to Plaintiff Gagne's out-of-state status Plaintiff should be required to post a cost bond, pursuant to LR 54.1, to secure costs.

4.    In answering Paragraph 4 of Plaintiffs' Complaint, Defendants lack sufficient information to form a belief of the truth of the allegations and therefore deny the same. Defendants affirmatively allege that due to Plaintiff Gagne's out-of-state status Plaintiff should be required to post a cost bond, pursuant to LR 54.1 to secure costs.

5. In answering Paragraph 5, Defendant City of Mesa admits the allegations.

6. In answering Paragraph 6, Defendants admit only that Chief Cost is the current chief of the City of Mesa Police Department ("MPD") and was the Chief at the time of the incident. Defendants deny that Chief Cost was present at the scene of the events as they unfolded.

7. In answering Paragraph 7, Defendants admit only that Defendant Matthew Harris was a Sergeant with the SWAT team for Mesa Police Department with badge number 16816 at the time of this incident. Defendant lacks sufficient information to form a belief as to whether any shots fired by Defendant Harris were "fatal shots." Defendants affirmatively allege that the Office of Medical Examiner conducted an Autopsy of the decedent, which concluded that only six shots struck the decedent and not all of these shots caused death. *See* Ex. 1, Medical Examiner's Report. Defendant is unable to answer the allegations as it relates to "overseeing the MPD SWAT" officers due to its overbreadth. Defendant affirmatively alleges that there was another Sergeant at the scene in addition to Defendant Harris, Defendant Harris was at a location by himself at the time he fired shots, and each officer makes their own decision as to whether force is justified. *See* Ex. 2, Scene Diagram. Defendants affirmatively allege that if no shots fired by Defendant Harris hit the decedent, then the claims against Defendant Harris are not viable. If shot(s) hit the decedent, but were not fatal, no claims are viable.

8. In answering Paragraph 8, Defendants admit the allegations in sentence one. Defendants deny the allegations in sentence two, the correct badge number is 17067. In answering sentence three, Defendants admit only that he fired rounds. Defendants affirmatively allege that the Office of Medical Examiner conducted an Autopsy of the decedent, which concluded that only six shots struck the decedent and not all of these shots caused death. *See* Ex. 1, Medical Examiner's Report. Defendants affirmatively allege that if no shots fired by Defendant Thomas hit the decedent, then the claims against Defendant Thomas are not viable. If shot(s) hit the decedent, but were not fatal, no claims are viable.

9.    In answering Paragraph 9, Defendants admit the allegations in sentences one and two. For sentence three, Defendants admit only that the Defendant Freeman fired only two shots from his firearm and lacks sufficient information to form a belief as to whether any shot directly hit Shawn. Defendants deny the allegations in sentence four and the allegations should be stricken pursuant to Rule 8 and 10. Defendants affirmatively allege that Plaintiffs lack a good faith factual basis for the allegations and contend that they are defamatory *per se.* Defendants affirmatively allege that the Office of Medical Examiner conducted an Autopsy of the decedent, which concluded that only six shots struck the decedent and not all of these shots caused death. *See* Ex. 1, Medical Examiner's Report. Defendants affirmatively allege that if no shots fired by Defendant Freeman hit the decedent, then the claims against Defendant Freeman are not viable. If shot(s) hit the decedent, but were not fatal, no claims are viable.

10.    In answering Paragraph 10, Defendants admit the allegations in sentence one. Defendant Brown's badge number is 21421. In answering sentence three, Defendants admit only that he fired rounds. Defendants affirmatively allege that the Office of Medical Examiner conducted an Autopsy of the decedent, which concluded that only six shots struck the decedent and not all of these shots caused death. *See* Ex. 1, Medical Examiner's Report. Defendants affirmatively allege that if no shots fired by Defendant Brown hit the decedent, then the claims against Defendant Brown are not viable. If shot(s) hit the decedent, but were not fatal, no claims are viable.

11.    In answering Paragraph 11, Defendants admit the allegations in sentence one. The correct badge number is 20495. In answering sentence three, Defendants admit only that he fired rounds. Defendants affirmatively allege that the Office of Medical Examiner conducted an Autopsy of the decedent, which concluded that only six shots struck the decedent and not all of the shots caused death. *See* Ex. 1, Medical Examiner's Report. Defendants affirmatively allege that if no shots fired by Defendant Cameron hit the decedent, then the claims against Defendant Cameron are not viable. If shot(s) hit the decedent, but were not fatal, no claims are viable.

4

12.     In answering Paragraph 12, Defendants admit the allegations in sentences 1 and 2. In answering sentence three, Defendants admit only that he fired rounds. Defendants affirmatively allege that the Office of Medical Examiner conducted an Autopsy of the decedent, which concluded that only six shots struck the decedent and not all of the shots caused death. *See* Ex. 1, Medical Examiner's Report.  Defendants affirmatively allege that if no shots fired by Defendant Chuey hit the decedent, then the claims against Defendant Chuey are not viable. If shot(s) hit the decedent, but were not fatal, no claims are viable

13.     In answering Paragraph 13, Defendants admit the allegations in sentence 1. The correct badge number is 20130. In answering sentence three, Defendants admit only that he fired rounds. Defendants affirmatively allege that the Office of Medical Examiner conducted an Autopsy of the decedent, which concluded that only six shots struck the decedent and not all of the shots caused death. *See* Ex. 1, Medical Examiner's Report. Defendants affirmatively allege that if no shots fired by Defendant Goodrich hit the decedent, then the claims against Defendant Goodrich are not viable. If shot(s) hit the decedent, but were not fatal, no claims are viable

14.     In answering Paragraph 14, Defendants admit the allegations in sentence 1. The correct badge number is 19827.  In answering sentence three, Defendants admit only that he fired rounds. Defendants affirmatively allege that the Office of Medical Examiner conducted an Autopsy of the decedent, which concluded that only six shots struck the decedent and not all of the shots caused death. *See* Ex. 1, Medical Examiner's Report. Defendants affirmatively allege that if no shots fired by Defendant Navarro hit the decedent, then the claims against Defendant Navarro are not viable. If shot(s) hit the decedent, but were not fatal, no claims are viable

15.     In answering Paragraph 15, Defendants admit only that Defendant Matthew Adair is a police officer for the City of Mesa who acted as a negotiator. Defendants affirmatively allege that Defendant Adair did not use any force and cannot be sued for excessive force and/or assault and battery for acting as a negotiator. Defendants

affirmatively allege that Defendant Adair tried to communicate with the decedent, but was

met with a barrage of threatening and homicidal statements.  The decedent threatened:

- Don't shine the fucking lasers in my fucking house bitch…shine a laser
  in my house one more time and I'll fucking unload. Shine a fucking laser
  in my house one more time I will fucking unload on you. I don't care"
  (*See* Ex. 3, 1:49-2:00)

- You are about to have a fucking crisis if you don't get away from my
  fucking house. Back the fuck up. Right now. With all your fucking
  SWAT with all your gear. I don't give a fuck. Get the fuck out of my
  fucking face before I fucking start dumping shots in em. Get the fuck out.
  Back the fuck up; (55 sec-1:15)

- Get the fuck out of my fucking house before I fucking start dumping shots
  in your fucking squad cars; (1:15-1:25)

- I'm going to start dumping shots. You guys want to play fucking guns.
  You guys want to play guns. Let's play fucking guns, bro; (2:17-22)

- I'll show you fucking scary, bro…get the fuck out of my fucking place.
  Get the fuck out. I don't care, bro. I don't care. I am about to fucking send
  the jaws of hell upon you people. Don't fuck with me dude. (3:00-3:16)

- I don't give a fuck bro. Come and blow a fucking hole through my head
  bro. (3:32-3:39)

- I will fucking dump a hole right through your fucking squad car. (3:47-
  4:00)

- Come to my fucking house and see what fucking happens, bro. Bring the
  fucking SWAT team in here. I don't give a fuck. I got AKs, I got fucking
  ARs, I will fucking blow a fucking hole right through your fucking head.
  Don't fuck with me, bro; (4:15-4:32)

- You guys are fucking up right now…You guys aren't going to take
  nothing, bro. I got my fucking shotgun, I got my fucking 12 gauge, I don't
  give a flying fuck, bro.  (4:34-4:55)

- If you guys fucking come into my vicinity there are going to be casualties,
  including yourself. I don't not give a fuck; (5:00-5:12)

- You ain't going to get me bro. I'm not coming out. (5:49-54)

- I will fucking unload on all your fucking team…Come in and get me.
  (6:10-40).

6

- We're coming to shoot right now, homie..I'm getting my fucking shit ready right now. I ain't playing no fucking games; (6:31-6:50)

- Get the fuck out of my house before I fucking start shooting shots; (8:28-8:32)

- I have my fucking armor on…I have my fucking guns loaded… Get the fuck out of here. I don't play no fucking games bro. You guys want a fucking full Iraq war from one person and you better fucking get ready. Shine fucking lights in my house again I will fucking start shooting. Put the fucking lasers down now; (9:52-10:15)

- Stop fucking shining lights in my fucking house with lasers. I will fucking start unloading on the squad car. They better back the fuck up, dude. If they don't want to lose their fucking lives, then I suggest you get the fuck away; (10:28-10:39)

*See* Ex. 3, negotiator call.

16.     In answering Paragraph 16, Defendants admit only that Defendant Christopher Orr is a police officer for the City of Mesa who arrived after the first shots had been fired and began assisting Defendant Adair. *See* Ex. 4, Orr Negotiator Supplement. Defendants affirmatively allege that Defendant Orr did not use any force and cannot be sued for excessive force or assault and battery for assisting with providing logistical support for the primary negotiator. Defendant Orr did not have any direct contact with the decedent and did not speak to him. *See* Ex. 3, negotiator call.

17.     In answering Paragraph 17, the allegations do not call for a response from these answering Defendants.  To the extent a response is required, Defendants deny the same.

18.     The allegations in Paragraph 18 should be stricken as they violate Rules 8 and 10 and bear no relationship to the claims asserted.  Defendants deny the allegations and affirmatively allege that Plaintiffs have been provided body camera footage. Defendants affirmatively allege that the roles of the involved officers was also clearly delineated in the police report.

## **FACTUAL ALLEGATIONS**

19.     In answering Paragraph 18, Defendants deny the allegations.

20.     In answering Paragraph 19, Defendants admit only that the decedent was 28 years old.  Defendants deny that their actions were unlawful and affirmatively allege that the decedent's choices caused his death.

21.     Defendants admit the allegations.

22.     The allegations in Paragraph 22 are wholly redundant of the allegations in Paragraph 18 and should be stricken as they violate Rules 8 and 10 and bear no relationship to the claims asserted.  Defendants deny the allegations and affirmatively allege that Plaintiffs have been provided body camera footage.

### **Shawn's Neighbor Provokes MPD Response**[2]

23.     In answering Paragraph 23, Defendants admit the allegations. Defendants further allege that the allegations are incomplete and that the 911 call provides further details. *See* Ex. 5, 911 call.

24.     In answering Paragraph 24, Defendants admit the allegations.

25.     In answering Paragraph 25, Defendants lack sufficient information to form a belief as to the truth of the allegations but admit that the neighbor later reported intoxication.

26.     In answering Paragraph 26, Defendants lack sufficient information to form a belief as to the truth of whether or not the decedent was actually scheduled to enter alcohol treatment but admit that this information was reported.

27.     In answering Paragraph 27, Defendants deny the allegations. *See* Ex. 5, 911 call.

28.     In answering Paragraph 28, Defendants admit that the neighbor called 911 but deny the Plaintiffs characterizations of the content. Defendants affirmatively allege that Plaintiffs Complaint provides incomplete information, and that Ex. 6 provides the complete information.  *See also* Ex. 6, CAD records.

---

[2] Defendants deny the allegations.  Defendants affirmatively allege that the decedent provoked the confrontation with the neighbor by choking his girlfriend out, shooting a round off the balcony, and then threatening to blow the women's brains out. Defendants affirmatively allege that all attempts to victim blame should be stricken under Rules 8 and 10. Under Ninth Circuit case law, knowledge of intoxication made the decedent more dangerous, not less.

**MPD Responds**

29.    In answering Paragraph 29, Defendants deny the allegations as written as the timeline alleged by Plaintiffs does not comport with the CAD records. *See* Ex. 6, CAD; Ex. 2, Scene Diagram for placement of vehicles. Defendants admit that officers began arriving around 9:34 p.m. and continued to arrive after this time.

30.    In answering Paragraph 30, Defendants deny the allegations as to time frame and deny that announcements started immediately when Officers arrived but admit that Officer Maldonado gave repeated announcements over a vehicle PA system and activated the sirens. *See* Ex. 7, Maldonado body camera (start time 10:19 p.m.). Defendants affirmatively allege that Officer Maldonado is no longer a Defendant in this litigation.

31.    In answering Paragraph 31, Defendants deny that Shawn Kurian and Scott Freeman remain as Defendants in this litigation.  Defendants admit only that after receiving no response after repeated PA announcements and sirens, Kurian instructed Officer Scott Freeman to deploy the first set of beanbag projectiles at the door to "knock" on the door because officers could not approach since the decedent was heavily armed. Three minutes later, a second set of beanbag projectiles was deployed to "knock" at the door. *See* Ex. 7, Maldanado body camera, at 4:28-7:21. Plaintiff opened the door with a rifle in his hand. *Id*. at 7:21-7:39.

32.    In answering Paragraph 32, Defendants lack sufficient information to form a belief as to the truth of the allegations and therefore deny the same. Defendants deny that they had access to any internal video camera at the time of this incident and dispute that the camera footage is relevant to the Defendants viewpoint of the event.

**Shawn's Cognitive Impairment Made Known to MPD[3]**

33.    In answering Paragraph 33, Defendants deny the allegations in sentence one. Defendants affirmatively allege that Jordan reported that she came back to the property

---

[3] Defendants deny that the decedent was "cognitively impaired."  Defendants admit that the decedent was reported to be intoxicated, but that the level of intoxication was unknown to the officers at the time.

because she saw officers and affirmatively sought them out. Defendants deny the remaining allegations as written because they are incomplete and misleading. The conversation between Jordan and Officer Manuel Gutierrez was captured on body camera, where Jordan repeatedly denied that the decedent had mental health issues and claimed he was intoxicated instead. Defendants deny the Plaintiffs' characterizations of the content and the video evidence speaks for itself. *See* Ex. 8, Gutierrez body camera at 7:70-51:50.

34. In answering Paragraph 34, Defendants deny the allegations as written because they are incomplete and misleading. The conversation between Jordan and Officer Manuel Gutierrez was captured on body camera, where Jordan repeatedly denied that the decedent had mental health issues and claimed he was intoxicated instead. Defendants deny the Plaintiffs' characterizations of the content and the video evidence speaks for itself. *See* Ex. 8, Gutierrez body camera at 7:70-51:50.

35. In answering Paragraph 35, Defendants deny the allegations as written because they are incomplete and misleading. The conversation between Jordan and Officer Manuel Gutierrez was captured on body camera, where Jordan repeatedly denied that the decedent had mental health issues and claimed he was intoxicated instead. Defendants deny the Plaintiffs' characterizations of the content and the video evidence speaks for itself. *See* Ex. 8, Gutierrez body camera at 7:70-51:50.

36. In answering Paragraph 36, Defendants deny the allegations.

37. In answering Paragraph 37, Defendants admit only that Shawn was seen at the door with a rifle. The allegations in Paragraph 37 about no further announcements contradict the allegations in Paragraph 41 where Plaintiffs claim that announcements were then made at 10:19 p.m. Defendants affirmatively allege that contact was made with the decedent by telephone. *See* Ex. 3.

///

///

///

**MPD Escalates Confrontation[4]**

38.    In answering Paragraph 38, Defendants deny the allegations because the timing is inaccurate, and it is unclear what "27 minutes later" modifies.   Defendants affirmatively allege that the correct timing and sequencing is set forth in the CAD, attached as Ex. 6.

39.    In answering Paragraph 39, Defendants deny the allegations and denies that Defendant Sergeant Jess Nicholson remains a defendant in this case.

40.    In answering Paragraph 40, Defendants deny the allegations in sentence 1. Defendants deny the allegations as written in sentence 2. Defendants admit that Shawn Freeman, a SWAT sniper, was positioned in unit #2165, but denies that it was a perch because the unit was on equal elevation with the decedent's unit. Defendants affirmatively allege that the decedent was in a perch position over patrol and other SWAT officers offering him a dangerous tactical advantage to carry out a mass shooting.

41.    In answering Paragraph 41, Defendants deny that Samons remains a defendant in this. Defendant denies the timing and sequencing, which Plaintiffs have confused throughout their allegations. Defendants admit that the decedent made multiple statements threatening violence but deny the remaining allegations.  *See* Ex. 3.

42.    In answering Paragraph 42, Defendants deny the allegations as written. See Ex 8, Gutierrez body camera.

43.    In answering Paragraph 43, Defendants admit the allegations but affirmatively allege that they omit context and numerous threatening statements made by the decedent. *See* Ex. 3.

44.    In answering Paragraph 44, Defendants deny that the conversation was broadcast over MPD radio. Updates from the negotiator were put out over the radio, but the conversation was not word for word. Defendants admit that officers attempted to monitor

---

[4] Defendants deny the allegations in this heading. Defendants affirmatively allege that the decedent was hostile, violent, and homicidal. *See* Ex. 3, negotiator call; Ex. 6, Mesa CAD records; Ex. 5, 911 call.

the decedent's movements, but some of the doors and windows were blocked with foil, which gave the decedent a tactical advantage. *See* Ex. 2.  Defendant admits that the decedent was pacing with a rifle in his hands as reported by multiple third-party witnesses. *See* Ex. 9, Scott Freeman body camera witness interviews. Defendants allege that the decedent reported that he was heavily armed and multiple weapons and ammunition were found in the apartment. *See* Ex. 10, scene photographs,

45.     Iin answering Paragraph 45, Defendants admit only that the full conversation including the context and exact words spoken are recorded on Ex. 3. Defendants admit that the decedent, while threatening to kill officers, demanded that they turn off sirens, put down their lasers, and leave.   Defendants deny all attempts to omit context, present a mischaracterized summary of the event based upon selective quotation, and to improperly characterize the contents of this call. Defendants deny that the decedent lacked knowledge of the officers' reasons for being at the apartment given earlier statements he made to Officer Adair about the incident.

**MPD SWAT Opens Fire on Shawn**

46.     In answering Paragraph 46, Defendants admit only that Defendant Shawn Freeman deployed his weapon but deny the remaining allegations. Defendants affirmatively allege that the decedent threatened to kill officers multiple times during the negotiator call, was not engaging in any negotiations and was instead making homicidal statements, and multiple witnesses saw the decedent pacing with a rifle (described as an AK-47) in his hand. *See* Ex. 9; Ex. 3. An AK-47 was recovered from the kitchen where the decedent sustained gunshots. *See* Ex. 10, p. 4.

47.     In answering Paragraph 47, Defendant admits only that Adair confirmed that Shawn was hit and deny the remaining allegations.

48.     In answering Paragraph 48, Defendants admit only that Defendant Orr voiced that a tactical 998 (officer-involved-shooting) had occurred. Defendants admit that the recorded call captures the remaining communications, where Defendant Adair requested surrender, but the decedent never responded positively. *See* Ex. 3.

49.    In answering Paragraph 49, Defendants deny the allegations in sentence 1. Defendants affirmatively allege that they did not have access to the interior surveillance and their justification for shooting (excluding Orr, Adair, and Cost who did not shoot) to be assessed from the view that they possessed outside the unit. In answering sentence 2, Defendants deny that Jordan had foundation to offer relevant information regarding the decedent's body armor as she was not in the unit and decedent told officers he was wearing body armor. Defendants affirmatively allege that the decedent fired shots at officers, as documented on helicopter video. *See* Ex. 11, helicopter video; Ex. 12, screen shots of video showing rounds exiting the glass.

50.    In answering Paragraph 50, Defendants lack sufficient information to form a belief as to the truth of the allegations and therefore deny the same.  Defendants do not have access to the interior surveillance and the justification for shooting (excluding Orr, Adair, and Cost who did not shoot) is to be assessed from the view that they possessed outside the unit.

51.    In answering Paragraph 51, Defendants deny the allegations. Defendants affirmatively allege that multiple of the windows were covered with tin foil. *See* Ex. 2, p. 9, 11, 13, 22.

52.    In answering Paragraph 52, Defendants deny the allegations.

53.    In answering Paragraph 53, Defendants deny all allegations except for admitting only that <u>after </u>the shots were fired, Shawn shouted "I'm down!" "I'm down!"

**MPD Conduct After Excessive Force and Killing of Shawn[5]**

54.    In answering Paragraph 54, Defendants deny the allegations as all Defendants mentioned in this paragraph have been removed from the litigation and no claims can be based upon these allegations. Defendants admit that a drone was flown into the apartment to attempt to determine if the decedent was playing possum and attempting to ambush the

---

[5] Defendants deny excessive force.

officers. The view of the decedent was obstructed by a door that had fallen over him (which decedent ripped off the hinges at some point) and by the fact that he was lying face down.

55.    In answering Paragraph 55, Defendants deny the allegations as all Defendants mentioned in this paragraph have been removed from this litigation and no claims can be based upon these allegations. Defendants admit that Officer Mask attempted to deploy a K9, who did not bite, as officers were concerned that the decedent was playing possum and attempting to ambush officers.

56.    In answering Paragraph 56, Defendants admit the allegations in sentence 1. The allegations in sentence 2 related to an officer who is no longer a defendant.

### Count One (§ 1983)

(All Named Defendants Violated Shawn's Civil Rights Under 42 U.S.C. § 1983)

57.    The allegations in Paragraph 57 do not call for a response from these answering Defendants.  To the extent a response is required, Defendants deny the same. Defendants Cost, Orr, and Adair have filed a Motion to Dismiss this claim.

58.    Defendants deny the allegations in Paragraph 58.

59.    Defendants deny the allegations as written in Paragraph 59 as they call for a legal conclusion. The decedent's rights were to be balanced by the risk of harm he posed to the community and to other officers by virtue of his criminal conduct perpetrated against his girlfriend and neighbor, his resistance to officers' attempts to resolve the situation, his homicidal threats, and his actions in pacing through the apartment and shooting rounds at officers. Defendants affirmatively allege that they are entitled to instructions under A.R.S. § 12-711 and 12-712 and that the officers are entitled to a presumption of reasonableness under A.R.S. § 12-716.

60.    Defendants admit the allegations in Paragraph 60.  Defendants affirmatively allege that by virtue of his intoxication, the decedent was more dangerous and A.R.S. § 12-711 applies such that the Plaintiffs should not recover anything on their state law claims. In addition to instructions on comparative fault, Defendants are entitled to a separate jury instruction under A.R.S. 12-711.

61.    Defendants deny the allegations in Paragraph 61.  Defendants affirmatively allege that decedent was at a position of advantage from his elevated position, was heavily armed with multiple weapons and ammunition, and utilized the tinfoil windows to cover his actions. The responding patrol officers' ballistic vests were not rated to stop ammunition from Plaintiff's firearms.

62.    Defendants deny the allegations in Paragraph 62.

63.    Defendants deny the allegations in Paragraph 63. Defendants affirmatively allege that the Defendants never had knowledge that the decedent was unarmed and, if he was, it was a reasonable mistake of fact given: (1) decedent's homicidal threats and statements; (2) decedent and other witnesses confirmation that he was heavily armed; (3) decedent fired a weapon in the air previously that night; (4) decedent came to the door with a rifle in his hand; (5) officers and third-party witnesses saw the decedent with a rifle in his hand before he was shot; (6) there was blood on the AK-47 rifle demonstrating that the decedent had it in close proximity to himself at the time he was shot; (7) the decedent fired shots at officers; and (8) a magazine was found near the decedent at the bottom of the stairway. *See* Exs. 2, 3, 7, 11, 12, 13.

64.    Defendants deny the allegations in Paragraph 64.  Defendants affirmatively allege that the apartments had not been cleared and that the range of the decedent's rifles directly disputes this allegation. The range of the decedent's rifles was hundreds of yards.

65.    Defendants deny the allegations in Paragraph 65.

66.    Defendants deny the allegations in Paragraph 66.

67.    Defendants deny the allegations in Paragraph 67.

68.    Defendants deny the allegations in Paragraph 68.

69.    In answering Paragraph 69, Defendants admit that one or more of the six shots that hit the decedent caused his death. Defendants deny that any actions by Orr, Cost, or Adair caused the decedent's death.  Defendants further deny that non-fatal and missed shots caused the decedent's death.

70.    Defendants deny the allegations in paragraph 70.

71.    In answering Paragraph 71, the allegations do not call for a response from these answering Defendants. To the extent a response is required, Defendants deny the same.  Defendants deny that the Estate is entitled to consortium damages, grief, sorrow, or anguish as these are non-recoverable wrongful death damages.

### **Count Two (*Monell*)**

(Defendants City of Mesa and Cost Were Deliberately Indifferent to Shawn's Rights under *Monell*)

72.    The allegations in Paragraph 72 do not call for an answer from these Answering Defendants. To the extent a response is required, Defendants deny the same. Defendant Cost has filed a Motion to Dismiss.

73.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

74.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

75.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

76.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

77.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

78.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

79.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

80.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

81.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

1    82.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
2    is required.

3    83.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
4    is required.

5    84.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
6    is required.

7    85.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
8    is required.

9    86.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
10    is required.

11    87.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
12    is required.

13    88.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
14    is required.

15    89.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
16    is required.

17    90.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
18    is required.

19    91.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
20    is required.

21    92.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
22    is required.

23    93.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
24    is required.

25    94.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
26    is required.

27    95.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response
28    is required.

96.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

97.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

98.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

99.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

100.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

101.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

102.    Defendants Mesa and Cost have filed a Motion to Dismiss, and no response is required.

**Count Three (Assault/Aggravated Assault/Wrongful Death)**

(Defendants Brown, Cameron, Chuey, Freeman, Goodrich, Harris, Navarro, and Thomas Committed Assault and Battery Leading to Shawn's Death)

103.    The allegations in Paragraph 103 do not call for a response from these answering Defendants. To the extent a response is required, Defendants deny the same.

104.    The allegations in Paragraph 104 call for a legal conclusion for which no response is required. Defendants deny liability. Defendants affirmatively allege that they will seek attorney fees and costs pursuant to A.R.S. § 12-716 and A.R.S. 13-420 if they succeed in proving justification.

105.    The allegations in Paragraph 105 call for a legal conclusion for which no response is required. Defendants deny liability and affirmatively allege that their force was privileged and justified. Defendants further affirmatively allege that any shots fired that did not hit the decedent do not meet the requirements for assault.

106.    The allegations in Paragraph 106 call for a legal conclusion for which no response is required. Defendants deny liability and affirmatively allege that their force was privileged and justified. Defendants further affirmatively allege that any shots fired that did not hit the decedent do not meet the requirements for assault.

107.    Defendants deny the allegations.

108.    Defendants deny the allegations.

109.    Defendants deny the allegations.

110.    Defendants deny the allegations.

111.    Defendants deny the allegations.

112.    Defendants deny the allegations.  Defendants deny that there is any evidence that the decedent provided any financial or economic support to the Plaintiffs.

### **Count Four (Negligent Hiring, Training, and Supervision)**

(Defendant City of Mesa Was Negligent in Hiring, Training, and Supervising Officers)

113.    The allegations contained in Paragraph 113 are not directed at these answering Defendants. To the extent a response is required, Defendants deny the same.

114.    The City of Mesa and Cost have filed a Motion to Dismiss.

115.    The City of Mesa and Cost have filed a Motion to Dismiss.

116.    The City of Mesa and Cost have filed a Motion to Dismiss.

117.    The City of Mesa and Cost have filed a Motion to Dismiss.

118.    The City of Mesa and Cost have filed a Motion to Dismiss.

119.    The City of Mesa and Cost have filed a Motion to Dismiss.

120.    The City of Mesa and Cost have filed a Motion to Dismiss.

121.    The City of Mesa and Cost have filed a Motion to Dismiss.

122.    The City of Mesa and Cost have filed a Motion to Dismiss.

123.    The City of Mesa and Cost have Filed a Motion to Dismiss.

124.    The City of Mesa and Cost have filed a Motion to Dismiss.

125.    The City of Mesa and Cost have filed a Motion to Dismiss.

1

**Count Five (Loss of Consortium)**

2

(All Named Defendants Caused Plaintiffs' Loss of Consortium)

3      126.    The Defendants have filed a Motion to Dismiss.

4      127.    The Defendants have filed a Motion to Dismiss.

5      128.    The Defendants have filed a Motion to Dismiss.

6      129.    The Defendants have filed a Motion to Dismiss.

7      130.    The Defendants have filed a Motion to Dismiss.

8

**AFFIRMATIVE DEFENSES**

9      Defendants set forth the following defenses to Plaintiffs' Complaint. Some of the

10  defenses outlined below are true affirmative defenses (on which Defendants would bear the

11  burden of proof or burden of production), other defenses are outlined for the purpose of

12  placing the Plaintiffs on notice of the legal defenses that Defendants will assert for the

13  purpose of allowing Plaintiffs to fully evaluate their claims as this relates to any future

14  request, by Defendants, for attorneys' fees for any claim that is subject to dismissal by the

15  Court:

16      1.    Defendants incorporate, by reference, the legal defenses set forth in their

17  Motions to Dismiss.

18      2.    Discovery may reveal that Plaintiffs failed to comply with service and

19  substantive requirements of A.R.S. § 12-821.01, the Notice of Claim statute.

20      3.    Plaintiffs bear the burden of establishing that there is case law clearly

21  establishing the law for the purposes of qualified immunity on the federal claims and have

22  not identified any factually similar case law.

23      4.    Fictitious defendants are not permitted in federal court and should be

24  dismissed.

25      5.    Plaintiffs' Complaint, in whole or in part, fails to state a claim upon which

26  relief may be granted.

27

28

6.      The decedent was solely or comparatively at fault for the injuries and damages alleged in the Complaint, thereby barring or reducing any recovery herein by way of comparative negligence.

7.      Defendants allege the immunities set forth in A.R.S. §§ 12-711, 12-712, and 12-716, including all applicable attorneys' fees available under these sections.

8.      At all times set forth in the Complaint, the City and its officers acted reasonably, in good faith, without malice, and based upon probable cause, reasonable suspicion, and/or their community caretaking responsibilities.

9.      The officers' actions were objectively reasonable and conformed with their community caretaking obligations.

10.      The decedent constituted a direct threat to the community and officers.

11.      Plaintiffs may have failed to mitigate their damages, thus barring or reducing the recovery against Defendants.

12.      Arizona's survival statute precludes any federal claim for damages for any force that did not cause death.

13.      The decedent assumed the risk of injury, acted in direct and intentional violation of Arizona laws, and acted intentionally and knowingly, jeopardizing his safety and well-being.

14.      The doctrine of reasonable mistake of fact may apply.

15.      The City of Mesa is not subject to liability under 42 U.S.C. § 1983 as Plaintiffs cannot prove any violations pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

16.      None of the City's training, supervision, or discipline/alleged failure to discipline was constitutionally deficient.

17.      Defendants deny that there were any constitutional or state law violations of the Defendant officers and, as a result, Plaintiffs cannot recover under Monell in the absence of a constitutional violation or under state law in the absence of underlying torts.

18.    Defendants allege that the decedent's flight/resistance/non-compliance/force/shots at officers was not justified, and any injuries sustained were the result of decedent's unlawful and/or unjustified actions.

19.    To the extent that Plaintiffs assert any punitive damages, such damages are barred by A.R.S. § 12-820.04 and *Smith v. Wade*, 416 U.S. 30 (1983); *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247 (1981); and *Lancaster Community Hospital v. Antelope valley Hospital District*, 940 F.2d 397 (9th Cir. 1991).

20.    Defendants are entitled to all privileges and immunities, including qualified immunity, extended to governmental employees and/or entities under federal law as described in *Hunter v. Bryant*, 112 S.Ct. 534 (1991) and *Saucier v. Katz*, 121 S.Ct. 2151 (2001).

21.    Defendants use of force was justified and privileged under Arizona's justification statutes, including A.R.S. Title 13, Section 400 et seq., including but not limited to §§ 13-403, 13-409, 13-410, 13-411, 13-413, and under *Graham v. Connor*, 490 U.S. 386 (1989) and *Scott v. Harris*, 550 U.S. 372 (2007). To the extent found justified under state law, A.R.S. § 13-420 provides for attorneys' fees and all costs to the prevailing Defendants.

22.    Plaintiffs may not assert any claims against any Defendants who did not use force.

23.    Plaintiffs' claims against Chief Cost are official capacity claims that are redundant of the claims against the City of Mesa.

24.    Plaintiffs have not alleged any personal participation arising to liability for any Defendants who did not use force.

25.    *Ryan v. Napier* and A.R.S. § 12-820.05 bar the claims alleged against the City and Chief Cost.

26.    A.R.S. § 13-4110 and 12-611 bar Plaintiffs' claims for loss of consortium before death as asserted in Count Five.

27.    The decedent acted to commit suicide-by-cop.

28.    Defendant puts Plaintiffs on notice that further affirmative defenses may be added in an amended answer after discovery. These defenses may include any defense set forth in Rule 8(d) and/or Rule 12(b) of the Federal Rules of Civil procedure, or as otherwise allowed by law

WHEREFORE, having fully answered Plaintiffs' First Amended Complaint, Defendants deny that Plaintiffs are entitled to any relief, including but not limited to the recovery of compensatory damages, punitive damages, or any other type of damages, deny that Plaintiffs are entitled to recover any legal fees or costs, and requests that judgment be entered in favor of Defendants and against Plaintiffs, that the Defendants be awarded all relief they are entitled under the law, including but not limited to attorneys' fees and costs under A.R.S. § 12-349, 42 U.S.C. § 1988, and 28 U.S.C. § 1927.

DATED this 6th day of September, 2024.

**WIENEKE LAW GROUP, PLC**

By:    */s/ Christina Retts*
Kathleen L. Wieneke
Christina Retts
Garrett Griggs
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
*Attorneys for Defendants City of Mesa, Harris, Navarro, Cameron, Adair, Chuey, Goodrich, Freeman, Thomas, Orr, Brown, and Cost*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 6, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Zachary Mushkatel
Jordan A. Brunner
MUSHKATEL, ROBBINS & BECKER, PLLC
15249 North 99th Avenue
Sun City, Arizona 85351-1964
*Attorneys for Plaintiffs*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

By:    */s/ Lauren Rasmussen*