Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Gagne, in his capacity as the Personal Representative of the Estate of Shawn Taylor Gagne; Christopher and Suzette Gagne, husband and wife, as the surviving parents of decedent Shawn Gagne,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Mesa, a political subdivision of the State of Arizona; Matthew Harris, in his individual capacity and in his capacity as a police officer; Kyle Thomas, in his individual capacity and in his capacity as a police officer; Shawn Freeman, in his individual capacity and in his capacity as a police officer; Matt Brown, in his individual capacity and in his capacity as a police officer; Kyle Cameron, in his individual capacity and in his capacity as a police officer; Matthew Chuey, in his individual capacity and in his capacity as a police officer; Robert Goodrich, in his individual capacity and in his capacity as a police officer; Alejandro Navarro, in his individual capacity and in his capacity as a police officer; Matthew Adair, in his individual capacity and in his capacity as a police officer; Christopher Orr, in his individual capacity and in his capacity as a police officer; ABC Partnerships I-X; | Case No.: CV-24-01337-PHX-SHD<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>(Assigned to the Honorable Sharad H. Desai) |

XYZ Corporations I-X; John Does I-X and Jane Does I-X,

                Defendants.

Through counsel undersigned, Plaintiffs hereby respond in opposition to "Defendants Adair, Mesa, and Orr's Motion to Dismiss Plaintiffs' Third Amended Complaint," (the "MTD") filed by Defendants Adair, Mesa, and Orr (collectively, "Defendants"), which seeks dismissal of Plaintiffs' Third Amended Complaint (the "TAC"). This Response is supported by the Memorandum of Points and Authorities below, Plaintiffs' October 21, 2024, Response in Opposition to Defendants' Motion to Dismiss (the "Initial MTD Response") (Doc. 76, filing and exhibits incorporated herein by this reference), and all relevant parts of the record in this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    BACKGROUND

As an initial matter, Defendants opine that Plaintiffs somehow misrepresented facts. For example, in Defendants' MTD Page 3, 24-25, Defendants state "Plaintiff falsely claims that 'Shawn awoke from sleep startled and confused,' yet the internal surveillance footage documents otherwise as described below." Plaintiffs accurately described what the internal surveillance footage depicts. Shawn was asleep or passed out on his couch from the significant amount of alcohol he consumed.

Defendants continue to rely on their exhibits 1-15 which they filed with Doc. 79. Those exhibits are surveillance footage from inside Shawn's apartment. However, they conspicuously leave out critical portions of the internal footage that exists. At Defendants' Ex. 8, the footage starts with a timestamp of 9:14:48 PM. That video is two minutes and eight seconds long. Their next exhibit – Ex. 9 – starts at timestamp 10:25:30 PM. An additional four videos exist with timestamps between Defendants' Ex. 8 and 9. Plaintiffs

2

have cited to one of those videos in previous filings (Doc. 76 Ex. 2(A)) which starts with a timestamp of 10:19:41 PM. That video is one minute and fifty-two seconds long. In that video, Shawn can be seen on his couch with his head in his hands. *Id.* at 10:19:41–10:21:33. During that video, bean bags can be heard impacting the front door of the house. *Id.* A PA system announcement can be heard. Sirens can be heard. *Id.* His phone lights up at one minute and twenty-three seconds. *Id.* Through it all, Shawn does not move from his position nor does he react to any of the noise. Shawn was either sleeping or passed out. *Id.* Shawn awoke in a drunken stupor with no context for what was happening and saw bright lights glaring into his residence. (Doc. 76 Ex. 2(B) at 10:25:09-10:25:30).

Plaintiffs have not misrepresented facts.

## II.     **STANDARD OF REVIEW**

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.,* 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678).  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id*. at 1144-45 (citation omitted).

When resolving a motion to dismiss, a Court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Further, in the context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citation omitted). Facts pled are

assumed to be true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id*. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Consequently, motions to dismiss are disfavored and are to be granted only if there is no cognizable factual or legal basis for the claim

### III. PLAINTIFFS' AMENDED CLAIMS AGAINST ADAIR AND ORR FOR FAILURE TO INTERVENE ARE SUFFICIENTLY PLED.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (quotations omitted) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994)). "[O]fficers can be held liable for failing to intercede [ ] if they had an opportunity to intercede." *Id.* (citation omitted). "[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *Koon*, 34 F.3d at 1447 n.25, *rev'd on other grounds*, 518 U.S. 81 (1996). Moreover, liability under § 1983 extends to officers "who perform functions 'integral' to an unlawful search, even if their individual actions do not themselves rise to the level of a constitutional violation." *Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011). Officers that provide armed backup during an unconstitutional search are integral to that search. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) (each officer involved in the search operation was an integral participant).

#### 1. This Court's August 6, 2025 Order (Doc 94):

This Court ordered that Plaintiffs need to plead additional facts to support their 42 U.S.C. § 1983 claims against Defendants Adair and Orr. This Court held:

4

> In asserting a claim under Section 1983, "the plaintiff must assert the violation of a federal right." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989). To that end, "a plaintiff cannot sue under just § 1983; a plaintiff must also allege a statutory or constitutional right that has been violated." *Ellar v. City of Mesa*, 2023 WL 6539874, at *3 (D. Ariz. 2023). And a Section 1983 claim cannot use state law as its anchor. *Mitchel v. City of Santa Rosa,* 695 F. Supp. 2d 1001, 1007 (N.D. Cal. 2010). That said, a plaintiff need not even "invoke § 1983 expressly in order to state a claim," so long as the plaintiff alleges sufficient facts under Rule 8. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). Accordingly, the FAC's lack of allegations of excessive force by Officers Adair and Orr is not necessarily fatal to Plaintiffs' claim against them. On balance, Plaintiffs fail to sufficiently allege their Section 1983 claim against Defendant Officers Adair and Orr. Because this claim is framed as an excessive force claim, it is unclear what specific constitutional right Plaintiffs claim Defendant Officers Adair and Orr violated. Although Plaintiffs argue in their response that the FAC "outlines how, despite being aware that Shawn was surrendering and was already wounded, Defendants Adair and Orr failed to communicate these facts to SWAT officers," (Doc. 76 at 6), these allegations are not in the FAC. Accordingly, the lack of specific allegations against Defendants Adair and Orr require dismissal of the claim against them. *See Molina v. Allison*, 2022 WL 3013179, at *4 (C.D. Cal. 2022) (dismissing complaint where "none of the individual 'claims' specified the Defendants or legal grounds at issue – i.e., which specific constitutional right is each Defendant alleged to have violated, and what did each Defendant do to violate such rights," because it did "not provide Defendants with fair notice of the particular claims being asserted and the grounds upon which each claim rest[ed], as required by Rule 8" (citation modified)).

Doc 94 at 10-11.

The Court further held that "Plaintiffs' Section 1983 claim against Defendant Officers Adair and Orr is dismissed with leave to amend." *Id.* at 11.

This is exactly what Plaintiffs did in their Second Amended Complaint (Doc 96) which was further amended by stipulation (Doc 99) as Plaintiffs' Third Amended Complaint (Doc 101).

### 2. **<u>Allegations Against Adair and Orr</u>**

Plaintiffs added specific allegations to the TAC regarding both Adair and Orr. Plaintiffs further amended Count I to include the proper language regarding a Police Officer's duty to intercede when their fellow officers violate the constitutional rights of a

5

suspect or other citizen. TAC ¶¶ 227-231. Failure to Intervene is a cognizable theory for liability under 42 U.S.C. § 1983. The Defendant's failure to intervene is as if the Defendant had committed the Constitutional violation himself/herself. "[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *Koon*, 34 F.3d at 1447 n.25, rev'd on other grounds, 518 U.S. 81 (1996).

Adair and Orr were integral participants in the incident as alleged in the TAC. TAC ¶¶ 14-15. SWAT arrived at approximately 10:00 PM. *Id.* at ¶ 41. Adair began talking with Shawn at 10:31 PM. *Id.* at 48. This continued and at 10:41 PM, Shawn told Adair that he wanted officers to leave. *Id.* at 50. Adair told Shawn they were there because of the "incident" to which Shawn responded "what incident?". *Id.* Shawn, while talking with Adair, laid his rifle down at 10:42 PM. *Id.* at 52. Twenty-seven seconds later Shawn was shot by Freeman. *Id.* at 53. Orr advised Adair that there was an officer involved shooting ("OIS"). *Id.* at 69. Both Adair and Orr knew that Shawn had been shot and then Adair instructed Shawn to walk out the front door with his hands up. *Id.* Adair heard a second shot. *Id.* at 71. Shawn told Adair that he had been shot and that he was injured. *Id.* at 70. Adair and Orr did not inform any officers that Shawn reported he was injured. *Id.* at 72-73. Shawn began walking out with his hands up, Defendant Adair asked him if he was hurt and where he had been hit. *Id.* at 74-75. Shawn told Adair that he was struck in the face. *Id.* at 75. Neither Adair nor Orr relayed this information – instead Adair told Shawn that emergency personnel were on scene to render him aid once he exited the apartment. *Id.* at 75. Adair told Shawn to make his way to the front door with his empty hands raised. *Id.* At no time did communications with Shawn and Adair and Orr cease. *Id.* at 76. Adair yelled for Orr that he needs a secondary. *Id.* at 78. Adair and Orr worked together to perform negotiations. As Shawn was following their instructions, and as he approached his stairway landing, he was subjected to a barrage of gunshots. *Id.* at 81. Adair and Orr both heard this, yet still did nothing to relay that Shawn was injured already and instructed to head towards the stairway. *Id.* at 84. Shawn cried out "I'm down, I'm down, I'm down!. *Id.* at 82. Both

Orr and Adair heard him cry out. *Id.* at 83. Yet, Adair and Orr said nothing, nor did they relay this critical information. *Id.* at 84. Another 15 seconds passed, and yet another volley of gunshots were fired at Shawn. *Id.* at 85.

As argued before, Adair and Orr also had sufficient notice that their conduct was likely to violate Shawn's right to life. Claimants alleging a violation of 42 U.S.C. § 1983 need not demonstrate the violation was intentional to be successful—demonstrating negligence is enough. *See, e.g.*, *Monroe v. Pape*, 365 U.S. 167, 187 (1961) (*opining* that a "willful" or "specific intent" requirement should not be read into § 1983) (overruled on other grounds); *see also Whirl v. Kern*, 407 F.2d 781, 788 (5th Cir. 1968) (*explaining* that § 1983 was intended to protect federal rights from "prejudice, passion, **neglect**, [and] intolerance") (emphasis added) (internal citations omitted); *Navarette v. Procunier*, 536 F.2d 277, 281 (9th Cir. 1976) (*clarifying* that "a deprivation of rights need not be purposeful to be actionable under § 1983") (rev'd on other grounds). At most, claimants must demonstrate a "reckless disregard" for their constitutional rights by the alleged tortfeasor. *See, e.g.*, *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

Defendants argue that the only way a "derivative claim" could exist is if "Plaintiffs <u>first</u> establish that each officer's decision to shoot was unconstitutional". Defendants' MTD at 7:7-9 (emphasis in original). This ignores the fact that there are in fact Constitutional violations pled by Plaintiffs that have survived a Motion to Dismiss. In fact, Defendants Harris, Navarro, Cameron, Chuey, Goodrich, Freeman, Thomas, and Brown (the "Answering Defendants") have answered the TAC. (Doc. 103). Claims for violations of Shawn's Constitutional rights are moving forward. This is sufficient at the Motion to Dismiss stage to accept the facts as pled by Plaintiffs as true that an alleged Constitutional violation occurred by the Answering Defendants. The "derivative claim" must therefore survive based on that alone. The failure to intervene claim therefore does not have to address the first "Graham factor". *Graham v. Connor*, 490 U.S. 386 (1989).

Defendants argue that the facts and claims as alleged in the TAC posit a theory that once a "negotiator told a suspect to come out with their hands up and asked for them to

surrender, police would then be neutralized, would have to drop their weapons, and then hope that the suspect that they could not even see was going to suddenly follow the law." Defendants' MTD at 7:20-23. This is not even remotely close to what Plaintiffs have alleged. As discussed herein, Adair and Orr had constant contact with Shawn. TAC ¶¶ 48-52. They heard Shawn tell them he was injured and that he had been shot in the face. *Id.* at 74-75. They heard Shawn yell "I'm down! I'm down! I'm down!". *Id.* at 82. They did nothing to relay these facts to anyone. *Id.* at 84-85. Instead, they led Shawn to his ultimate death by failing to report to anyone that he had been shot, or that he was "down" and was surrendering. *Id.* While this does not negate the other Answering Defendants' actions, it could have provided critical information to other officers – enough to create a duty in the non-Answering Defendants officers on-scene to issue a stand down order. Even if Adair and Orr did not issue a stand down order themselves – which they did after Shawn had been shot multiple times, the information they withheld was critically important to the armed SWAT officers outside Shawn's apartment. Had they known that Shawn reported that he was shot and that he was "down" after multiple other shots were fired, they may not have been so quick to open fire the instant Shawn appeared at the front door, unarmed and ready to surrender.

This case is distinguishable from all of the cases cited by Defendants. In *Fernandez[1]*, officers arrived on scene because of a call by the mother of the victim that the suspect was acting violently: "Fernandez called 911 concerning her son, Daniel Frank Rodriguez ("Rodriguez"). In the call, Fernandez stated her son was acting violently, throwing things, and hurting her dog." *Fernandez v. Virgillo*, 2:12-cv-02475 JWS (D. Ariz. Jun 27, 2014). Rodriguez raised his gun at officers but then holstered it. *Id.* During the encounter, Officer Virgillo did everything to not escalate force. During the incident the officers used pepper spray and tased him. *Id.* Virgillo tried to then de-escalate the situation and allowed Rodriguez to grab his bike. Officer Chrisman then tried to grab Rodriguez, and Rodriguez'

---

[1] A decision that was designated "NOT FOR PUBLICATION" and therefore not precedent except as provided by Ninth Circuit Rule 36-3.

8

dog began barking. Chrisman shot Rodriguez' dog. *Id*. This caused an argument. About five seconds later, Chrisman – who had shot the dog – suddenly raised his weapon and shot and killed Rodriguez. *Id.* The District Court ultimately held that Virgillo actually did intercede at the beginning of the encounter by talking to "Rodriguez to try to calm him down, offered him a ride, and allowed him a pathway to wheel his bike out of the trailer and away from harm. Even if these attempts to prevent Chrisman from using excessive force were ultimately unsuccessful, plaintiffs cite no authority that clearly establishes he had a constitutional duty to intercede differently." *Fernandez v. Virgillo*, 2:12-cv-02475 JWS (D. Ariz. Jun 27, 2014), 15. The 9th Circuit later affirmed the District Court's decision to grant summary judgment to Virgillo. This is completely different than the facts in this case. The shooting in *Virgillo* happened in an instant, and Virgillo had already actually intervened. In this case, Adair and Orr had multiple opportunities to intercede – after Shawn had been shot, and after Shawn had yelled "I'm down! I'm down! I'm down!" yet they did not. They knew that other officers were pointing sniper rifles, had shined lasers into Shawn's apartment, and had already shot Shawn. They knew that the officers – including the Answering Defendants would shoot – because they already had.

This leads us to the next case cited as *Nelson,* 2018 U.S.Dist Lexis 114651 by Defendants. This appears to cite a District Court filing, Report and Recommendations by a Magistrate Judge in the UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA. Case # CV 11-5407-PSG (JPR) (Doc 413). That case involved a police chase and maneuver to disable the vehicle driven by the suspects. Officers surrounded the vehicle, officer Nolte saw the suspect pull his gun, yelled "Gun!", and immediately fired his weapon once or twice.  Other officers also then fired. Defendant points out that this encounter in *Nelson* lasted one minute. However, there were no communications occurring between officers and the suspects. Here, the negotiators – who are assigned to defuse incidents had been in contact with Shawn for at minimum twelve minutes; had heard him get shot initially; had heard a second gun shot twenty-seven seconds later; had then communicated with Shawn about his injuries; had then directed Shawn repeatedly to exit

9

the residence with his hands up and weapons-free; had heard another barrage of shots; had heard Shawn yell "I'm down! I'm down! I'm down!" but failed to convey any information regarding Shawn exiting the residence.

Defendants make the claim that officers on-scene including Answering Defendants would not have listened to or "were even required to listen" to the negotiators. Def. MTD at 8. What would ever be the purpose of a negotiator, if that were the case? Defendants also point out that the Mesa Police Department "pointed out the existence of its policies on its website in the first Motion to Dismiss." Def. MTD at 13, FN2. Reading these policies by following the link provided previously, no policies exist for a negotiator. Policies retrieved from https://public.powerdms.com/MESAPD/tree on October 8, 2025. There is ***no*** policy on communications between negotiators and SWAT officers. Similarly, training materials for negotiators are not provided on the referenced website. As argued previously, the opinion in *Johnson v. Cty. of Mesa*, 2021 U.S. Dist. LEXIS 170355 (D. Ariz. Sept. 8, 2021)—which Defendants cite as "addressing the City's de-escalation training, Use of Force policy, record retention policy, and tracking of complaints"—was only possible because the record was fully developed—a state of play absent here. Furthermore, the Court in *Johnson* recognized that the lack of a policy or training on a critical issue "could . . . result in officers using force in situations where it is not warranted," as happened here. 2021 U.S. Dist. LEXIS 170355, at *46-47. After Shawn had been fired upon multiple times, Defendant Adair then shouted, "weapons down!" after hearing Shawn cry out in pain after the second volley of shots. (Doc 76, Ex. 2 at 10:44:50-10:44:58). The firing stopped completely. Clearly, he had the ability to do so at any time – and it would have been listened to. If a negotiator is a position that does not matter, the opposite of Defendants' argument is true – a negotiator is there to direct a suspect into danger, rather than out of it. This cannot be.

### 3. <u>Qualified Immunity Does Not Apply</u>

Government officials are not entitled to qualified immunity when: (1) a plaintiff's allegations make out a violation of a constitutional right, and; (2) the right was clearly

10

established at the time of the official's alleged misconduct. *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1249 (9th Cir. 2016).

In *Saucier v. Katz*, the Supreme Court established a two-part analysis to determine if qualified immunity applied in a lawsuit "against an officer for an alleged violation of a constitutional right" holding first that it "must be whether a constitutional right would have been violated on the facts alleged" and second, whether or not the right was clearly established. 533 U.S. 194, 200, 121 S. Ct. 2151, 2155, 150 L. Ed. 2d 272 (2001). To determine whether a right is clearly established, the reviewing court must consider whether a reasonable officer would recognize that his or her conduct violates that right under the circumstances faced, and in light of the law that existed at that time. *Id*. at 202, 121 S.Ct. at 2156. As the Supreme Court has explained:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful... but it is to say that in the light of pre-existing law the unlawfulness must be apparent

*Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal citations omitted). However, "[i]n order to find that the law was clearly established... **we need not find a prior case with identical, or even 'materially similar' facts. Our task is to determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful**." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136–37 (9th Cir.2003) (citing *Hope*, 536 U.S. at 740, 122 S.Ct. 2508) (emphasis added). Thus, the specific, alleged conduct in this case need not have been previously and explicitly deemed unconstitutional, but existing case law must have made it clear.

Additionally, this District Court has held that:

> Precedent directly on point is not necessary to demonstrate that a right is clearly established. Rather, if the unlawfulness is apparent in light of

11

> preexisting law, then the standard is met. In addition, even if there is no closely analogous case law, **a right can be clearly established on the basis of common sense.**

*Wilson v. Maricopa County*, 484 F. Supp. 2d 1015, 1018 (D. Ariz. 2006) citing *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir.2001) (emphasis added).

The Court must review the Defendants' actions under the Fourth Amendment's objective reasonableness standard, balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *See Graham v. Connor*, 490 U.S. 386, 395, 396 (1989). The "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. The Graham test includes an examination of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Robinson v. Solano County*, 278 F.3d 1007, 1014 (9th Cir. 2002) (citing Graham, 490 U.S. at 397). In considering "the severity of the crime, the most important [factor], is the need for the force." *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). The force used is "permissible only when a strong government interest compels the employment of such force." *Tekle v. United States*, 457 F.3d 1088, 1094 (9th Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original); *see also Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003).

It is well settled that the standard is less stringent at this stage when a Motion to Dismiss is filed. *In re Fitness Holdings Int'l, Inc*., 714 F.3d 1141, 1144 (9th Cir. 2013). The facts as pled must be accepted as true. Officials seeking immunity bear "the burden of demonstrating that immunity attaches to a particular function." *Burns v. Reed*, 500 U.S. 478, 486 (1991). "[The Ninth Circuit] ha[s] held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. County of Riverside*, 120 F.3d 965, 977 n.10 (9th Cir. 1997) (collecting cases); *see also Torres v. U.S.*, 200 F.3d 179, 188 (3d Cir. 1999) (questions of fact existed relating to the allegation that police used

excessive force in searching a home that precluded summary judgment in officers' favor on that issue). Importantly, a plaintiff does not need to locate a controlling case that squarely governs the specific facts at issue, in "obvious case[s], where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances...." *See City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019); *Cf. Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) (clarifying that a constitutional right can be clearly established "even without a body of relevant case law" in an "obvious case.")

That is the case here. The underlying Constitutional violation remains an excessive force claim that was committed by the Answering Defendants. There is clearly established law that the use of excessive force is a violation of a person's Constitutional rights. "Police use of force is excessive and violates the Fourth Amendment if it's objectively unreasonable under the circumstances." *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1075 (9th Cir. 2017) (first citing *Graham v. Connor*, 490 U.S. 386, 388 (1989); and then citing *Scott v. Harris*, 550 U.S. 372, 383 (2007)). "If a jury determines that [the decedent] no longer posed an immediate threat, any deadly force [Defendants] used after that time violated *long-settled* Fourth Amendment law," as it is "*clearly established*" that "use of deadly force against a non-threatening suspect is unreasonable." *Id.* at 1076 (emphasis added) (first citing *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985); and then citing *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997)).

Here, after time on the phone with Adair and Orr, the Answering Defendants all saw that Shawn was unarmed, but chose to fire their weapons anyway. TAC ¶¶ 23, 63, 64, 89, 91, 94-96, 99-102, 104-107, 109-112, 114-117, 119-123, 132-134, 138-141, 145-148, 152-155, 168, 179, 184, 220. As discussed herein, the failure to intervene claim is the same – it is as if the passive defendant committed the underlying Constitutional violation. *Koon*, 34 F.3d at 1447 n.25, rev'd on other grounds, 518 U.S. 81 (1996). Shawn had a clearly established right to be free from the use of excessive force at the hands of the Defendants. The TAC sufficiently alleges that Shawn's Constitutional rights were violated by the

Answering Defendants. It also sufficiently alleges that not only did Adair and Orr not intervene, but that they were both integral participants, and had a reasonable opportunity multiple times to do so. That there does not exist a case wherein the facts are ***exactly*** the same as this case does not mean that the claim cannot be made. Defendants' reliance on that proposition is misplaced for two reasons.

First, it is clearly established that Courts are not held to that proposition – that a Court can review the underlying allegations and make decisions on qualified immunity based on the facts presented. *Cf. Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) (clarifying that a constitutional right can be clearly established "even without a body of relevant case law" in an "obvious case."). Second, the failure to intervene claim is – as Defendants put it – a derivative claim. The cases cited by Defendants are all cases where officers could clearly see that a suspect was a continuing threat – including situations wherein the decedent was actively firing shots or had fired multiple shots at bystanders. In this case, the need for force reduced by the minute, Shawn fired no shots at Defendants or anyone, and any force that was objectively unreasonable was a violation of Shawn's Constitutional rights. Certainly, after Shawn had been shot in the face by Freeman, reported the fact to Adair and Orr, and was ***seen*** unarmed (because he was unarmed), there can be no justification for further lethal force.

Defendants acknowledge that existing case law addresses shooters and not negotiators. Def. MTD at 10:9. However, failure to intervene claims are not distinguished by an officer's position. That would be ludicrous. Adair and Orr are police officers. As discussed herein, they were the assigned negotiators. Without belaboring the point, they were on scene with the Answering Defendants, they were integral participants as they had the line of communications open with Shawn the entire time, and they had multiple opportunities to intervene and failed.

14

## IV. **PLAINTIFFS'** *MONELL* **CLAIM IS NOT DEFICIENT.**

A "municipality may not be held liable pursuant to 42 U.S.C. § 1983 for the actions of its subordinates." *United States v. Town of Colorado City*, 935 F.3d 804, 808 (9th Cir. 2019). "Instead, to establish municipal liability, a plaintiff must show that a local government's 'policy or custom' led to the plaintiff's injury." *Id.* (citation omitted). The Ninth Circuit has stated that a plaintiff may satisfy this requirement merely by showing that the municipality has a "longstanding practice or custom." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 734 (9th Cir. 2025) (quoting *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021)). At the pleading stage, a plaintiff need not prove the existence of such a custom – rather, he need merely allege sufficient facts to make the claim plausible. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

A plaintiff may sufficiently plead a *Monell* custom or practice claim by showing a history of prior similar incidents which are "of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "[W]hile the Ninth Circuit has suggested that one or two prior similar incidents, standing alone, are generally insufficient to prove the existence of an unconstitutional custom or practice, <u>the law does *not* establish a precise number of previous lawsuits which must be *alleged*</u> to overcome a motion to dismiss." *Lesher v. City of Anderson*, 2:21-cv-00386 WBS DMC, *8 (E.D. Cal. Dec. 2, 2021) (emphasis added) (citing *Gonzalez v. Cnty. of Merced*, 289 F.Supp.3d 1094, 1099 (E.D. Cal. 2017)); *see also Oyenik v. Corizon Health Inc.*, 696 Fed. Appx. 792, 794 (9th Cir. 2017) ("While one or two incidents are insufficient to establish a custom or policy, we have not established what number of similar incidents would be sufficient to constitute a custom or policy."). As is clear from *Lesher* and *Trevino*, at the pleading stage Plaintiffs need only provide *allegations* of (an undefined number, but definitely more than two) prior instances of "similar" police misconduct. *See id.*; 99 F.3d at 918; *see also Oyenik*, 696

15

Fed. Appx. At 794. And here, Plaintiffs have gone above and beyond their burden at pleading by alleging at least *sixteen* cases of use of excessive force by Mesa police against individuals over a seven-year period from 2016 to 2023. *See* TAC ¶¶ 186-211. While Defendants complain that three of these occurred after Shawn's death, they do not dispute that at least eight of those remaining thirteen cases were shootings. *See* Defs.' Mot. 14:24-25.

In other words, even if the Court chooses to discount the three cases of excessive force by Mesa police alleged by Plaintiffs that occurred after Shawn's killing, and even if it further chooses to discount the five cases of excessive force that did not involve shootings, it is *still* the case that Plaintiffs have alleged no less than *eight* prior instances of shootings by Mesa police that involved excessive force. *See* TAC ¶¶ 186-211. Plaintiffs buttress those allegations by stating that "[i]n the first six months of 2022 alone, the City of Mesa paid out $5,444,000 to settle 10 claims against its officers, with payments ranging from $4,000 to $2,450,000," TAC ¶ 195, strongly implying that at least some claims against officers were justified. Plaintiffs allege that in each of those cases, the shooting victim posed no threat sufficient to justify the use of deadly force by the officer. *See, e.g.,* TAC ¶ 201 (Mesa police shot and killed unarmed man crawling to them while crying and begging them not to shoot), ¶ 202 (Mesa police shot and killed minor female who was unarmed and not suspected of any crime), ¶ 206 (Mesa police shot and killed twenty-year-old man who was complying with their orders), ¶¶ 207-08 (two instances of Mesa police shooting individuals fleeing from them), ¶ 210 (Mesa police shot and killed suicidal man experiencing a mental health episode). That is exactly what Plaintiffs allege happened in this case – i.e., that Shawn Gagne was shot and killed despite posing no credible threat at the time he was shot, let alone a threat sufficient to justify the use of deadly force.

Defendants resort to nitpicking about the details of Plaintiffs' allegations of prior excessive force by Mesa police, complaining that the facts in those matters are not squarely on all fours with those here. However, Defendants cannot point to any authority requiring that to allege a *Monell* claim based on practice or custom, a plaintiff must set forth

16

allegations containing facts that are identical, or even substantially identical, to those at issue. The standard is merely that the allegations be of "*similar* incidents." *See Benally v. Coconino Cnty.*, CV-24-08049-PCT-MTL (MTM), *18 (D. Ariz. Mar 17, 2025) (emphasis added); *Oyenik*, 696 Fed. Appx. At 794. In alleging sixteen prior instances of use of excessive force by Mesa police, thirteen of which occurred prior to Shawn's killing, and eight of which concern shootings of individuals where deadly force was used, Plaintiffs have more than met their burden at the pleading stage.

Moreover, at the pleading stage a plaintiff certainly cannot be expected to have detailed knowledge of a municipal defendant's policies, practices, or customs. Those facts are particularly within the knowledge and control of the municipality. "[T]o survive a Rule 12(b)(6) motion to dismiss, the Complaint does not need evidence or detailed factual allegations of a custom, policy or practice, but [instead] must [merely] allege enough facts to raise a <u>reasonable expectation that discovery will reveal evidence</u> of one." *Benno v. Shasta Cnty.*, No. 2:16-cv-01110-TLN-DMC, *10 (E.D. Cal. Nov 29, 2020) (emphasis added) (citing *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003)). Though Plaintiffs have alleged sufficient similar incidents to support a *Monell* claim based on practice or custom using the public information currently available to them, there are certainly many more such incidents of excessive force by Mesa police waiting to be discovered. Those additional policies, practices, and/or customs can, and will, be obtained by Plaintiffs during the discovery phase.

In addition to all the above, and in the final analysis – "normally, the question of <u>whether a policy or custom exists [is] a *jury* question</u>." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (emphasis added). For all the foregoing reasons, Plaintiffs have stated a *Monell* claim sufficient to survive dismissal.

## V.  **CONCLUSION**

For the foregoing reasons, Defendants MTD should be denied. If this Court deems that a further amendment may be necessary, Plaintiffs respectfully request that leave to amend be granted one further time.

17

**RESPECTFULLY SUBMITTED** this 8th day of October 2025.

**MILLS + WOODS LAW, PLLC**

By  /s/ Sean A. Woods
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014
    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2025, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kathleen L. Wieneke
kwieneke@wienekelawgroup.com
lrasmussen@wienekelawgroup.com
mmahler@wienekelawgroup.com
Christina Retts
cretts@wienekelawgroup.com
Rebekah K. Browder
rbrowder@wienekelawgroup.com
**WIENEKE LAW GROUP, PLC**
1225 W Washington St., Ste. 313
Tempe, AZ 85288
(602) 715-1868
*Attorneys for Defendants Harris, Navarro, Cameron, Adair, Chuey, Goodrich, Freeman, Thomas, Orr, Brown, and Cost*

    /s/ Ben Dangerfield