Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
Rebekah K. Browder, Bar #024992
WIENEKE LAW GROUP, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com
Email: rbrowder@wienekelawgroup.com

*Attorneys for Defendants City of Mesa, Adair, Brown, Cameron, Chuey, Freeman, Goodrich, Harris, Navarro, Orr, and Thomas*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Christopher Gagne, in his capacity as the Personal Representative of the Estate of Shawn Taylor Gagne; Christopher and Suzette Gagne, husband and wife, as the surviving parents of decedent Shawn Gagne,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Mesa, a political subdivision of the State of Arizona; Matthew Harris, in his individual capacity and in his capacity as a police officer; Kyle Thomas, in his individual capacity and in his capacity as a police officer; Shawn Freeman, in his individual capacity and in his capacity as a police officer; Matt Brown, in his individual capacity and in his capacity as a police officer; Kyle Cameron, in his individual capacity and in his capacity as a police officer; Matthew Chuey, in his individual capacity and in his capacity as a police officer; Robert Goodrich, in his individual capacity and in his capacity as a police officer; Alejandro Navarro, in his individual capacity and in his capacity as a police officer; Matthew Adair, in his individual capacity and in his capacity as a police officer; Christopher Orr, in his individual capacity and in his capacity as a police officer; ABC Partnerships I-X; XYZ Corporations I-X; John Does I-X and Jane Does I-X,<br>        Defendants. | NO. 2:24-cv-01337-SHD<br><br>**DEFENDANTS ADAIR, MESA, AND ORR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** |

Defendants' Motion to Dismiss should be granted because: (1) Plaintiffs have failed to identify a single controlling Ninth Circuit case that establishes that negotiators can be liable for failure to intervene, in future use of force, based upon a speculative theory that if they issued a "stand down" order the shooting officers would not have exercised their independent judgment in deciding whether decedent presented a mortal threat; (2) Plaintiffs have not alleged an "integral participant" theory of liability in this case and, even if they had, there is no case law applying integral participation to an unplanned shooting as against a negotiator; (3) Plaintiffs have not identified any similar cases sufficient to establish that the law was clearly established and, instead, rely on general legal principles; and (4) the *Monell* claim remains deficient.

In amending the *Monell* claim, Plaintiffs only added allegations of prior instances of dissimilar use of force. These "other instances" have no factual similarity and a number of them are/were pending cases. Plaintiffs do not identify a single prior shooting by SWAT officers, or any cases involving negotiators. Instead, more than half of their cases involve non-lethal force used by patrol officers. Even so, these new allegations only address one element necessary to prevail on a *Monell* claim. Plaintiffs still fail to: (1) identify any specific policy or training deficiency; and (2) establish that any deficiencies were the moving force behind the constitutional violation.

**I.    FACTUAL BACKGROUND**

Plaintiffs make no attempt to dispute the facts set forth by Defendants, including the Cox surveillance footage, which is incorporated by reference in their TAC. The only argument that Plaintiffs make is to continue to claim the false narrative that the decedent was "asleep" and somehow unaware of the reason why officers responded to his house. The decedent was not a person who was peacefully sleeping in a state of innocence; that the decedent had his eyes closed, while sitting up, for a matter of minutes while holding an AK-47 across his lap hardly makes him non-dangerous, unaware that he had engaged in domestic violence and then aggravated assault while firing his weapon on the porch, and threatening and intimidating. It is disingenuous for Plaintiffs to try to paint the decedent as

2

1  confused and unaware of why officers were there. *See* Doc, 79, Interior Surveillance Video
2  Exs. 1-15. In the TAC, Plaintiffs rely upon and make reference to internal surveillance
3  footage, which this court previously determined was incorporated by reference. (Doc. 94,
4  at p. 9); *see* TAC ¶¶ 35, 74, 87, 164; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,
5  1002 (9th Cir. 2018).

6  In the Response, Plaintiffs do not address the dozens of felonies that were committed
7  by the decedent establishing that his behavior was extraordinarily severe and that the
8  Defendants had the highest government interest in containing/responding to his behavior.
9  *See* A.R.S. § 13-1203-1204 (A)(2) & (4), (B)(1) & (2); A.R.S. § 13-3601 (A)(1); A.R.S. §
10 13-1204; A.R.S. § 13-1203; A.R.S. 13-1204 (A)(2) & (8)(a); A.R.S. §13-2508(A)(1) & (2);
11 A.R.S. § 13-3107; A.R.S. § 13-3116; and A.R.S. § 13-2904(A)(1), (3) & (6). Pursuant to
12 *Tennessee v. Garner*, 471 U.S. 1 (1985), the decedent's criminal activities and behavior
13 justified the shooting regardless of whether he had a weapon in his hand when he was shot.

14 **II.    LAW AND ARGUMENT**

   **A.    Plaintiffs' Failure to Intervene Claim/Integral Participation Claim
15          Against the Negotiators Fails and Qualified Immunity Applies (Count I).**

16 **The Failure to Intervene/Integral Participation Claim Fails[1]:** Plaintiffs make several
17 arguments that are not supported by the procedural history, or the law. Plaintiffs claim that
18 this Court need not address whether there is an underlying constitutional violation because
19 there are "constitutional violations pled by Plaintiffs that have survived a Motion to
20 Dismiss…The 'derivative claim' must therefore survive based on that alone." Doc. 111, p.
21 8. The shooting Defendants did not file a Motion to Dismiss and this is not accurate. That
22 some Defendants Answered does not provide Plaintiffs with a "pass" in establishing that
23 the facts pled support a failure to intervene claim. *See Dodson v. Prince George's Cnty.*,

---

[1] There is no integral participation claim in the TAC.  There is only a failure to intervene claim. In the Response, Plaintiffs once refered to the "failure to intervene" claim as an "integral participation claim." Plaintiffs, however, never discuss the differences between these two claims. Integral participation claims generally involve pre-planned uses of force, or force where one officer's holding down of the suspect allows the force to occur. Integral participation is a poor fit for a negotiator claim, and no case law has applied it to negotiators. Failure to intervene and integral participation exists only in federal law and do not apply to the state law claim of assault and battery.

2016 U.S. Dist. LEXIS 1206 (D. Md. Jan 6, 2016) (if no excessive force is applied by the fellow officer, the officer witnessing the conduct cannot be held liable under bystander liability for a failure to intervene). A failure to intervene theory is not *respondeat* superior, despite Plaintiffs' attempt to argue that it is. *Atencio v. Arpaio*, 674 F. App'x 623, 626 (9th Cir. 2016) (concluding that district court erred in denying qualified immunity to an officer on excessive force claim where, although the officer might have seen another officer deliver a knee strike, there was no evidence that the first officer "directed or otherwise knew that the solitary knee strike would occur, physically participated in the knee strike, or had a realistic opportunity to stop the knee strike from happening."). Plaintiffs' failure to address the *Graham* factors should be taken as a concession that they favor the Defendants.

Plaintiffs next assert that their claim does not fail because they have alleged "negligence." This is wrong. *Alves v. Cnty. of Riverside*, 135 F.4th 1161, 1170 (9th Cir. April 29, 2025) (distinguishing Fourth Amendment law from tort law, as Fourth Amendment jurisprudence is rooted in the constitutional text's original public meaning and traditional standards of reasonableness); *Sandra T.-E. v. Sperlik*, 639 F.Supp. 2d 912 (N.D.Ill. July 23, 2009, negligent omission is insufficient to support a failure-to-intervene claim). They cite to *Monroe v. Pape*, 365 U.S. 167 (1961), which was overruled by *Monell v. Dep't of Soc. Servics.*, 436 U.S. 658 (1978). Plaintiffs also cite to a non-binding Fifth Circuit false arrest case, *Whirl v. Kern*, 407 F.2d 781 (5th Cir. Dec. 30, 1986), which is wholly inapplicable and has been questioned by multiple subsequent decisions. Finally, Plaintiffs cite to *Navarette v. Procunier*, 536 F.2d 277 (9th Cir. Feb. 9, 1976), a case involving prisoners' rights under the First and Fourteenth Amendment to the contents of their outgoing mail, which has also been overruled and is inapplicable.

Plaintiffs next argue that the decedent's exclamations that "I'm down! I'm down," before he opened the door and was shot again, should have been communicated by the negotiators. Plaintiffs do not explain—within the context of the decedent's prior and repeated threats to kill officers and statements that "I am not coming out"—how communicating that the decedent was down, or shot, should have changed the officers'

1    perception of the decedent's dangerousness, or would have prevented the shooting. *See*
2    A.R.S. § 13-410 (C)(2)(c) (authorizing deadly force to affect an arrest where the officer
3    reasonably believes "through past or present conduct of the person which is known by the
4    peace officer that the person is likely to endanger human life or inflict serious bodily injury
5    to another unless apprehended without delay."); *see* Doc. 79, Ex. 10 (Calling Jordan while
6    holding the rifle and talking about the cops: "they want to fucking go, lets go…open up the
7    door…I got my own fucking army. I will blast a whole through your fucking head homie;"
8    rifle aimed and pointed at the door multiple times followed by threats "I will fucking shoot
9    this motherfucker up…I will show you fucking scary;" yelling "I'm not coming out" while
10   pointing and aiming rifle); Doc. 79, Ex. 14 (Pacing with rifle in hand, "I am not coming out,
11   on God…you can stay out there all god damn fucking year…I have full thirty round fucking
12   clips. You want to come to my fucking door I will fucking unload on all of your fucking
13   team;" "Come in and get me;" "I'm getting shit ready right now…I ain't playing no fucking
14   games. I got my armor on, fuck this (putting body armor on)."). In addressing the
15   intervention itself, Plaintiffs do not offer any facts establishing that the negotiators had any
16   realistic opportunity to intervene in any alleged unconstitutional force "occurring in their
17   presence," were physically capable of preventing the shooting, or even knew conclusively
18   that the officers were going to shoot in the future. Indeed, Plaintiffs allege that only fifteen
19   seconds elapsed between when the decedent exclaimed he was down, then opened the door,
20   and another volley of shots was fired. (Doc. 101, ¶ 85). That the decedent had been shot did
21   not mean that he was unarmed or did not have access to a weapon. The words "I'm down!
22   I'm down," did not communicate surrender.
23          There is no constitutional obligation for the negotiators to give any commands to
24   other officers to lower their weapons in the face of receiving no communication from the
25   decedent that he was surrendering and given that he had not been searched. Plaintiffs do not
26   explain how the shooting officers would have known that the decedent did not have a
27   weapon concealed on his person/waistband/pocket when he came to the door, particularly
28   given that the other times he came to the door he was armed. Even if the decedent had

claimed that he was surrendering, the law does not require the officers to "stand down" and holster their weapons given what had previously occurred. Faced with the decedent's violent actions and verbal tirade, no one on the scene was under any obligation to disarm themselves in the hopes that decedent was not going to kill someone. How would officers ensure that this was not an ambush, designed to allow the decedent to kill as many officers and bystanders as possible—as he repeatedly promised previously to do—as they waited to determine if he really intended to make good on the surrender. Such a proposition would only serve to increase the risk to officers and the public and give non-compliant violent suspects an incentive to maintain an extensive period of non-compliance. Under Plaintiffs' theory, as long as a negotiator told a suspect to come out with their hands up and asked for them to surrender, police would then be neutralized, would have to drop their weapons, and then hope that the suspect that they could not even see was going to suddenly follow the law. No case law stands for this proposition.

Plaintiffs argue that "failure to intervene claims are not distinguished by an officer's position. That would be ludicrous. Adair and Orr are police officers." Doc. 111, p. 14. Contrary to Plaintiffs' unsupported argument, the role that Adair and Orr played is directly relevant to their opportunity to intervene and the type of claimed intervention. There is no allegation that Adair and Orr were in proximity to any of the Defendants, had a view similar to any of the Defendants, or did anything other than communicate with the decedent by phone and with officers over the radio. *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1060-61 (D. Ariz. 2020) (complaint failed to state a claim for failure to intervene where the "possibility of intervention [was] conclusory and unsupported by facts indicating, for example, [the non-shooting officer's] physical proximity to [the shooting officer] at the time of the shooting," and even assuming that the non-shooting officer "escalated the situation through his initial use of fist strikes and a taser, such escalation [did not] show that he had the opportunity to intervene [in the shooting officer's] subsequent decision to shoot" the decedent). There is no allegation that Defendants Adair and Orr were acting in a supervisory

capacity, had responsibility for overall control of the scene, or could over-ride the SWAT supervisor's decisions.

This is not the first time that Plaintiffs' lawyers have made similar unsupported arguments, including this "stand down" theory. *See Kirk v. City of Phoenix*, 2025 U.S. Dist. LEXIS 135209, *15-16 (D.Ariz. July 15, 2025) (rejecting Attorney Wood's failure to intervene theory, which was also argued as an integral participation theory on briefing, made against officers and helicopter pilot that they could have intervened based upon information communicated over the radio and told other officers to hold their fire). In *Kirk*, the court also rejected the newly injected "integral participation argument," holding that there were no allegations to show that the individuals "set in motion a series of acts" by the officers on the ground that they "knew or reasonably should have known would cause" the officers to shoot: "Howard and Ramirez's report that Leontae was actively shooting a weapon is insufficient to support their liability as integral participants, even if, as Plaintiffs allege, the shooting would not have occurred but for the false report." *Id*. at *18. *Kirk* explained "it was not reasonably foreseeable that the ground officers would start shooting based upon this information alone, without observing Leontae for themselves to determine whether he had a weapon." *Id*. at *19. Here, like in *Kirk*, Plaintiffs fail to explain how the **omission** in the radio transmissions caused the shooting and caused officers to allegedly abdicate their responsibility to observe and assess the threat they believed that decedent posed.

Plaintiffs offer no factual or legal basis endorsing a constitutional basis for their theory that non-supervisory officers are responsible, for an act of omission, by failing to give a "stand down order." *Waller v. City of Nogales*, 2023 U.S. Dixt. LEXIS 99499 (D.Ariz. June 7, 2023) (rejecting failure to intervene theory against officers in the vicinity who were equipped with radios that they could have communicated about). Plaintiffs acknowledge that it is only "possible" that the shooting would have been avoided if additional information was communicated over the radio. Possibility is not equivalent to causation.

7

1   Given the events that unfolded in this case, Plaintiffs' failure to intervene claim is even less compelling than those barred in *Fernandez*, 651 F. App'x 692, 693-94, *Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991) (summary judgment proper for non-shooting SWAT officers when officer several feet away positioned all around the room suddenly used force and the incident "transpired in a matter of seconds."), *Burns*, 2017 U.S. Dist. LEXIS 195389 (N.D.Cal. 2017), and *Nelson v. City of Los Angeles*, 2018 U.S.Dist. LEXIS 114651 (C.D.Cal. 2018). While Plaintiffs try to distance their case from these, they fail to provide any cases that they contend are more similar. Instead, they simply argue that they have stated claims.

There is no allegation of any realistic opportunity for Orr and Adair to intervene in a manner that was safe, appropriate, or that their omission caused the shooting. Plaintiffs offer no support for the contention that any of the shooting officers involved in the third-volley would have listened, or were even required to listen, to any "order" by negotiators to disarm or "stand down" before decedent even opened the door.[2] There is no evidence that Defendants Orr and Adair knew that further shots would be fired, or even that they had a vantage point to see what was going to occur based upon their position away from the primary scene with the decedent's girlfriend.

**Qualified Immunity Applies Because the Law Was Not Clearly Established:** Plaintiffs have the burden of identifying clearly established law applying to the facts of the case. Instead of meeting this burden, Plaintiffs criticize Defendants for pointing to case law involving shootings, but the only reason Defendants have addressed this law is that there is no case law addressing negotiators. Instead, as Defendants pointed out—and Plaintiffs' do not dispute by identifying any negotiator case—the case law involving failure to intervene addresses constitutional violations occurring in the **presence** of the defendant that they had a reasonable opportunity to prevent, not force that has not even occurred. Although

---

[2] Plaintiffs' theory does not apply to the first shot fired by Freeman, or the shots fired before the decedent went down to the landing. His statement that he was "down," was made shortly before he opened the door.

Plaintiffs attempt to use the *Sweet* case as the basis for their *Monell* claim, they fail to confront the District Court's ruling as it related to the bystander officers. In *Sweet v. City of Mesa*, 2022 U.S.Dist. LEXIS 19879, *49 (D.Ariz. Feb. 4, 2022), the court rejected liability under both state and federal law as against the bystander officers (who were in the hallway feet away from the shooting officer) because the court could find no case where officers were found to have acted with reckless disregard by a failure to act.

Plaintiffs make no attempt to address any of the case law cited by Defendants: *Isayeva v. Sacramento Sheriff's Dep't,* 878 F.3d 938 (9th Cir. 2017); *Lal v. California*, 746 F.3d 1112 (2014) (qualified immunity granted where it was clear that the decedent was attempting to provoke officers to shoot him and he advanced with a large rock over his head); *Long v. City & County of Honolulu*, 511 F.3d 901 (Ninth Cir. 2007); or *Sabbe v. Wash. Cnty. Bd. Of Comm'rs*, 84 F.4th 807, 812 (9th Cir. 2023) ("the relevant question for purposes of qualified immunity" is not whether Sabbe actually threatened the officers, but whether they 'could reasonably have believed that [h]e posed such a threat.").

Here, Defendants Adair and Orr responded to the scene of a reported domestic violence incident where the decedent shot a firearm, threatened the neighbor and his girlfriend, came to the door with a rifle in his hand, repeatedly threatened to kill officers, was wearing body armor, and was repeatedly pointing the firearm at officers while yelling threats. (Doc. 79, Exs. 1-15). Nothing in the clearly established law supports the proposition that negotiators breached some duty to intervene in a shooting that was reasonable. Qualified immunity bars the claims against Adair and Orr.

**B.    The *Monell* Claim Remains Deficient.**

Plaintiffs' primary argument is that they do not possess information regarding training and policies and that such information will be "discovered" during the discovery phase. Yet, discovery has been ongoing in this case now for more than one year.[3] Plaintiffs

---

[3] Plaintiffs served and Defendants responded to Plaintiffs' written discovery producing all personnel files and prior professional standards bureau investigations involving the individual Defendants. Defendants have produced a total of 4910 bates labeled documents in this case.

9

1  must marshal their facts before filing suit and can easily do so by accessing publicly
2  available documents (policies on the City's website, documents attached to cases) or by
3  serving a public records request before filing suit. Nothing prevented Plaintiffs from
4  requesting the City's training and policies and procedures before this lawsuit was filed. *See*
5  *J.K.J. v. City of San Diego*, 17 F. 4th 1247, 2021 U.S. App. LEXIS 33778 at *15-16 (9th
6  Cir. Nov. 15, 2021) ("[J.K.J.] appears to argue that the officers' alleged deviation from
7  training indicated the need for more or different training. But the amended complaint never
8  identified what additional training was required beyond what Taub and Durbin received.
9  Nor did it allege facts indicating that his supposed failure to enhance officer training was
10 the moving force behind Jenkins' injuries."); *Andrich v. Kostas,* 470 F.Supp. 3d 1048, 1064
11 (D.Ariz. June 30, 2020); *Warren v. Penzone*, 2024 U.S. Dist. LEXIS 89121, *15-17
12 (D.Ariz. May 17, 2024),

13        As raised in the Response, the only "facts" that were added involve pending, settled,
14 or past litigation, which has no similarity to this case and offers no evidence that the conduct
15 at issue was a traditional method of carrying out policy. Without citing to any legal
16 authority, and contrary to the public policy behind settlements and Rule 408, Plaintiffs
17 baldly claim that the total amount of settlements paid by Mesa (reported in hearsay news
18 stories) "strongly imply justified claims." This is wrong. *See Williams v. City of Burlington,*
19 516 F.Supp. 3d 851 (S.D.Iowa Jan. 29, 2021) ("Plaintiff's do not explain, in the absence of
20 evidence of an admission of liability in the *Steele* Case, how it would be relevant in
21 determining the City's *Monell* liability in this case. The facts of the *Steele* Case are also
22 distinct from this case…There is also a longstanding recognition that public policy favors
23 compromise and settlement of disputes and such evidence is likely inadmissible.").  Pending
24 or settled cases do not involve any judicial determination of unconstitutional force and, to
25 hold otherwise, would undermine the policy of settlement "by disincentivizing
26 municipalities from ever settling claims for fear that the settlements would later be used
27 against them." *See Webb v. Waterloo*, 2020 U.S. Dist. LEXIS 44299 (N.D. Iowa Mar. 10,
28 2020); *Naes v. City of St. Louis*, 2021 U.S. Dist. Lexis 242081, *20-21 (E.D. Mis. Dec. 21,

2021) (rejecting use of settlements as a basis for *Monell* claim as against public policy where plaintiff's allegations required the court to infer liability from the existence of the settlements alone). As the Court noted in *Naes,* in rejecting the use of settlements to prove a *Monell* claim:

> Put differently, Plaintiff's position requires the Court to infer liability from the existence of settlements alone. Plaintiff argues: (a) A lawsuit was filed against an officer; (b) the City settled that lawsuit; therefore, (c) the City should have disciplined that officer. Implicit in that argument is the assumption that the City would not have settled the lawsuit unless the officer had indeed been guilty of the allged misconduct—the very assumption that is impermissible under Rule 409, Weems, and Green, among other cases.

*Id*. at \*21. This is exactly the improper argument that Plaintiffs make in asserting that the City's settlements "strongly imply[] that at least some of the claims against officers were justified." (Doc. 111, p. 16); Plaintiffs were on notice of the need for specificity of actual prior constitutional violations of a similar nature (not settlements) by the Defendants' previous citation to *Andrich* and *Warren*.

Next, Plaintiffs argue that their global allegations of excessive force are sufficient, because, taking out the allegations of force occurring AFTER this incident, they have alleged eight prior instances of shootings occurring in an eight-year period. Even on raw numbers alone, with no analysis of the number of calls for service that officers responded to during this time, this low number is insufficient to show any *Monell* policy and custom. *Wondie v. King Cnty.*, 2023 U.S. Dist. LEXIS 337, 2023 WL 22058, \*3 (W.D. Wash. 2023) ("Typically, one or two instances of prior misconduct cannot demonstrate a widespread custom or policy. . .And while prior cases of similar conduct may provide some evidence that a practice is so ubiquitous that it amounts to official policy, such cases are less helpful when they do not result in an adjudication of wrongdoing."). As Defendants identified, these prior shootings have no factual similarity and Plaintiffs make no attempt to dispute or address the specific facts provided, taken from public filings in the lawsuits themselves and business records. *Cf. Warren v. Penzone*, 2023 U.S. Dist. LEXIS 204376, \*23-25 (D.Ariz. Nov. 15, 2023) (finding that three prior instances of alleged similar deaths and settlements were insufficient to state a training claim and considering the dockets, as public filings, in

1 ruling on the Motion to Dismiss determining that the facts were insufficient to establish
2 similarity). Six of these cases—*Carter v. Lawrence,* 2:24-cv-00670 (July 7, 2022), *Valdez*
3 *v. City of Mesa*, 2:24-cv-00642 (March 22, 2022), *Lane v. City of Mesa*, CV-19-00852
4 (April 20, 2017, innocent bystander shot), *Angel Benitez* (September 25, 2021), *Diego*
5 *Varela*, (September 5, 2021), and July 2, 2022—involved vehicle/traffic stops, which bear
6 no similarity to a highly agitated, armed, body-armor donning domestic-violence suspect in
7 an uncleared apartment complex. Not a single one of these cases involved a suspect with
8 access to assault rifles who threatened to "dump shots" into officers. The remaining two
9 cases—*Shaver v. City of Mesa*, 2:17-cv-00152-PHX-GMS (January 18, 2016) and *Sewell*
10 *v. City of Mesa*, 2:21-02036- PHX-DJH—also involved a patrol response to individuals
11 who were ultimately unarmed. *Sewell* involved a trespass, not a domestic violence incident
12 committed with a firearm. None of these cases involve the SWAT team, negotiators, or
13 heavily armed individuals in a position of tactical advantage within an elevated apartment.
14 That Plaintiffs' allegations of dissimilar uses of force remain deficient is plain based upon
15 a comparison to *Warren v. Penzone*, 2024 U.S. Dist. LEXIS 89121, *15-17 (D.Ariz. May
16 17, 2024).

17 Next, Plaintiffs do not address Defendants' argument that they cannot use the mere
18 existence of this incident or prior incidents, to support a failure to discipline as the Ninth
19 Circuit has held that the mere failure to discipline individual officers accused of
20 unconstitutional conduct does not amount to ratification. *See Haugen v. Brousseau,* 351
21 F.3d 372, 393 (9th Cir. 2013), *vacated on other grounds sub nom, Brousseau v. Hagan,* 543
22 U.S. 194, 201 (2004).

23 **III.   CONCLUSION**

24 For the foregoing reasons, Defendants' Motion to Dismiss should be granted. As
25 Plaintiffs have already amended once and not cured the deficiencies, discovery has been
26 ongoing for more than a year, and the Rule 16 deadline has long passed, further amendment
27 should not be granted.

28

DATED this 20th day of October, 2025.

                **WIENEKE LAW GROUP, PLC**

By:   */s/ Christina Retts*
Kathleen L. Wieneke
Christina Retts
Rebekah K. Browder
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
*Attorneys for Defendants City of Mesa, Adair, Brown, Cameron, Chuey, Freeman, Goodrich, Harris, Navarro, Orr, and Thomas*

# CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean A. Woods
Robert T. Mills
Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiffs*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

By:  */s/ Lauren Rasmussen*